# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00622-CR

**Nicholas James Marinos, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 299TH JUDICIAL DISTRICT
NO. 9014001, HONORABLE JON N. WISSER, JUDGE PRESIDING**

## O P I N I O N

A jury found appellant Nicholas James Marinos guilty of aggravated assault with a deadly weapon, for which the court assessed a five-year prison term. *See* Tex. Pen. Code Ann. § 22.02 (West Supp. 2005). Appellant contends that the evidence is factually insufficient to sustain the guilty verdict. He also asserts that the trial court failed to require a unanimous jury verdict, complains of the denial of a continuance, and urges that he should have been granted a new trial based on newly discovered evidence and ineffectiveness of trial counsel. Because we find no reversible error, we affirm the judgment of conviction.

### *Background*

Appellant and the complainant were divorced in September 1999. Three months later, on December 15, appellant unexpectedly appeared at the complainant's residence at 8:00 a.m.

with Christmas gifts for their two daughters.  After the complainant invited him in, appellant told her that he wanted to discuss changing their child custody arrangement.  When she told him that she was not interested in reopening that subject, appellant became angry.  The complainant asked appellant to leave and stood to open the door.  Appellant seized the complainant and began to shock her on the abdomen with a stun gun, a device designed to inflict a strong electric shock.

The complainant testified that the stun gun caused "a horrible pain," and she fell to the floor.  She tried to crawl away as appellant continued to shock her on her arms, legs, and torso.  The shocks left the complainant dizzy, breathless, and unable to control her movements.  The evidence reflects that appellant shocked the complainant over twenty times until the stun gun malfunctioned or lost its charge.

Appellant then took a plastic grocery bag from the complainant's laundry room, placed it over her head, and pressed it against her nose and mouth.  The complainant was unable to draw a breath.  She clawed at the plastic bag and finally succeeded in tearing it off her head.  Appellant took a piece of the torn bag and continued to suffocate the complainant.  Appellant held the plastic over the complainant's mouth and pinched her nose with his fingers.  The complainant testified that she drifted in and out of consciousness, became exhausted, and thought she was going to die.

Appellant talked to the complainant throughout the assault.  He said "he wanted to hurt me as bad as I hurt him.  And that he hated me.  And that he wanted to kill me.  And he said that he was going to go to Huntsville anyway so he might as well finish what he started."

The complainant managed to rise to a seated position, place her feet against her refrigerator, and press back against appellant.  Appellant released her and suddenly became calm.

He told the complainant that he had not intended to kill her, but only to choke her until she passed out. The complainant again asked appellant to leave, and he did so without further incident. The complainant then called the police.

A deputy medical examiner testified that a person deprived of oxygen will experience "brown outs," lose consciousness within forty-five seconds, and suffer permanent brain damage within four minutes. The witness testified that an obstruction of a person's airway constitutes an impairment of the person's physical condition. The witness also testified that a plastic bag, a piece of a plastic bag, and a hand, when used in the manner described in the complainant's testimony, are capable of causing death or serious bodily injury.

Appellant testified and admitted taking the stun gun to the complainant's residence. He said that he and the complainant argued about the custody of their children, and that the argument degenerated into a "shouting match." When she threatened to call the police, they struggled over possession of the telephone and she bit him on the hand. Appellant said he "lost it" and began to shock the complainant with the stun gun. He admitted shocking her repeatedly until she promised to stop screaming. Appellant denied making any threats to kill the complainant. He also denied suffocating her in any manner.

The indictment contained two counts with multiple paragraphs. Count one alleged bodily injury assault aggravated by the use of a deadly weapon:

- Paragraph one alleged that appellant caused bodily injury "by placing a bag on or about the [complainant's] face" and that the bag was a deadly weapon.

- Paragraph two alleged that appellant caused bodily injury "by placing a piece of a bag on or about the [complainant's] face" and that the piece of bag was a deadly weapon.

3

- Paragraph three alleged that appellant caused bodily injury "by placing his hand over the [complainant's] mouth and nose" and that the hand was a deadly weapon.

*See id*. §§ 22.01(a)(1), 22.02(a)(2). Count two alleged assault by threat aggravated by the use of a deadly weapon:

- Paragraph one alleged that appellant threatened the complainant with imminent bodily injury while using a bag as a deadly weapon.

- Paragraph two alleged that appellant threatened the complainant with imminent bodily injury while using his hand as a deadly weapon.

*See id*. §§ 22.01(a)(2), 22.02(a)(2). In a single application paragraph, the court authorized appellant's conviction on any or all of the five paragraphs contained in the two counts, and the jury returned a general verdict convicting appellant of aggravated assault.[1]

### Sufficiency of Evidence

Appellant contends the evidence is factually insufficient to sustain the guilty verdict. The question presented is whether the jury was rationally justified in finding guilt beyond a reasonable doubt when all the evidence is viewed in a neutral light. *Zuniga v. State*, 144 S.W.3d 477, 484 (Tex. Crim. App. 2004). Evidence may be factually insufficient because: (1) the evidence of guilt, considered alone, is too weak to support a finding of guilt beyond a reasonable doubt, or (2) the contrary evidence is so strong as to preclude a finding of guilt beyond a reasonable doubt. *Id*.

---

[1] The court's charge also authorized appellant's conviction for the lesser included offense of bodily injury assault had the jury found that he was not guilty of aggravated assault.

4

at 484-85. Evidence of guilt can preponderate in favor of conviction but still be insufficient to prove the elements of the offense beyond a reasonable doubt. *Id*. at 485.

Appellant challenges the credibility of the complainant's testimony by pointing out that no plastic bag or any piece of a plastic bag was found by the police at the scene of the attack. He also notes the absence of any evidence that the complainant had marks or discoloration on her face consistent with her account of being smothered. Finally, he urges that the complainant's description of appellant restraining her while placing a bag over her head was impossible and would have required him to have "three hands."

In a factual sufficiency review, due deference must be accorded the fact finder's determinations, particularly those concerning the weight and credibility of the evidence. *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000). We may disagree with the result only to prevent a manifest injustice. *Id*. We believe that the jury could reasonably discount any inconsistencies or improbabilities in the complainant's testimony in light of the circumstances. She was hardly in a position to coolly note and remember the precise details of the attack. While the absence of physical evidence may lend some credence to appellant's testimony denying that he smothered the complainant with a bag or his hand, the jury's decision to believe the complainant rather than appellant was not manifestly unjust.

Appellant also urges that the evidence is inadequate to support a finding that he used or intended to use a bag, a piece of a bag, or his hand in a manner capable of causing death or serious bodily injury. *See* Tex. Pen. Code Ann. § 1.07(a)(17)(B) (West Supp. 2005) (defining "deadly weapon"). He argues that there is no evidence that the complainant experienced a serious risk of death or a protracted loss or impairment of bodily function. *See id*. § 1.07(a)(46) (defining "serious

bodily injury"). For a weapon to be deadly, however, requires only that it be used in a manner *capable* of causing death or serious bodily injury. *See McCain v. State*, 22 S.W.3d 497, 503 (Tex. Crim. App. 2000). The testimony of the complainant and the medical examiner is sufficient to support a finding that appellant used and intended to use a bag, a piece of a bag, and his hand in a manner capable of causing death or serious bodily injury.

The evidence is factually sufficient to support a finding beyond a reasonable doubt that appellant threatened and caused bodily injury to the complainant while and by using and exhibiting a deadly weapon. Point of error one is overruled.

### *Jury Unanimity*

As previously mentioned, the trial court's jury charge contained a single application paragraph that combined the two counts of the indictment. The charge authorized appellant's conviction of aggravated assault if the jury found that he:

- caused bodily injury to the complainant by placing a bag on her face and that the bag was a deadly weapon, "and/or"

- caused bodily injury to the complainant by placing a piece of a bag on her face and that the piece of a bag was a deadly weapon, "and/or"

- caused bodily injury to the complainant by placing his hand over her mouth and nose and that his hand was a deadly weapon, "and/or"

- threatened the complainant with imminent bodily injury while using or exhibiting a bag as a deadly weapon, "and/or"

- threatened the complainant with imminent bodily injury while using or exhibiting his hand as a deadly weapon.

6

The jury returned a general verdict of guilty "as alleged in the indictment." The jury also answered affirmatively a special issue asking whether appellant used or exhibited a deadly weapon in the commission of the offense. In eight points of error grouped into a single argument, appellant contends that the jury charge and verdict form denied him his right to a unanimous jury verdict. *See* U.S. Const. amend. VI, XIV; Tex. Const. art. V, § 13; Tex. Code Crim. Proc. Ann. art. 36.29(a) (West Supp. 2005).

We agree with appellant that the court erred by failing to require a unanimous verdict finding him guilty of either aggravated bodily injury assault or aggravated assault by threat. We reach this conclusion on the authority of *Ngo v. State*, No. PD-0504-04, 2005 Tex. Crim. App. LEXIS 457, at *11 (Tex. Crim. App. Mar. 16, 2005).[2] In *Ngo*, the defendant was accused of committing credit card abuse by stealing the complainant's credit card, by receiving the complainant's credit card knowing it had been stolen, and by presenting the complainant's credit card with the intent to obtain a fraudulent benefit. *Id*. at *1, *10; *see* Tex. Pen. Code Ann. § 32.31(b)(1)(A), (4) (West Supp. 2005). The trial court's charge authorized a conviction for credit card abuse if each juror believed that the defendant was guilty under one of the three theories, but without requiring jury unanimity as to any one theory. *Id*. at *1, *5 n.5. This was error, said the court, because stealing a credit card, receiving a stolen credit card, and fraudulently presenting a credit card are three different criminal acts or offenses, and not merely different manners of committing a single credit card abuse offense. *Id*. at *15-16. The court held, "When the State accuses a defendant of different criminal acts, regardless of whether those acts constitute violations

_____

[2] Although this opinion has yet to appear in the South Western Reporter, it is final. The court's mandate issued on April 11, 2005.

7

of the same or different statutory provisions, the jury must be instructed that it cannot return a guilty verdict unless it unanimously agrees upon the commission of any one of these criminal acts." *Id.* at \*11 (citing *Francis v. State*, 36 S.W.3d 121, 125 (Tex. Crim. App. 2000)).

Similarly, *causing* bodily injury to another and *threatening* another with imminent bodily injury are separately defined statutory criminal acts. Tex. Pen. Code Ann. § 22.01(a)(1), (2). Bodily injury assault is a "result of conduct" offense that can be committed intentionally, knowingly, or recklessly. *Fuller v. State*, 819 S.W.2d 254, 255-56 (Tex. App.—Austin 1991, pet. ref'd). Assault by threat is a "nature of conduct" offense that can only be committed intentionally or knowingly. *Guzman v. State*, 988 S.W.2d 884, 887 (Tex. App.—Corpus Christi 1999, no pet.). *See* Tex. Pen. Code Ann. § 6.03 (West 2005) (defining culpable mental states). Applying the analysis used in *Ngo*, we conclude that bodily injury assault and assault by threat are different criminal acts for which a defendant may be convicted only by a unanimous finding of guilt. Therefore, even though the State sought only a single aggravated assault conviction, it was error for the trial court to authorize that conviction without requiring the jury to unanimously agree that appellant committed aggravated bodily injury assault or aggravated assault by threat.

We do not agree with appellant's contention that jury unanimity was required with respect to any specific paragraph within count one or count two, that is, with respect to the specific manner or means by which the aggravated bodily injury assault or aggravated assault by threat was committed. There is a "crucial distinction" between a fact that is a specific *actus reus* element of the crime and one that is but the means to the commission of a specific *actus reus* element.[3] *Ngo*,

---

[3] The drafter of the indictment appears to have understood this distinction. The aggravated bodily injury assault and the aggravated assault by threat offenses were properly alleged in separate

8

at *18. An indictment may allege different manners or means of committing a single offense, and the jurors are not required to agree upon a single manner or means. *Id.* at *15-16; *Francis*, 36 S.W.2d at 124. When alternate manners and means of committing an offense are submitted to the jury, it is appropriate for the jury to return a general verdict for that offense if the evidence supports a conviction under any one of them. *Kitchens v. State*, 823 S.W.2d 256, 258 (Tex. Crim. App. 1991).

In short, aggravated bodily injury assault and aggravated assault by threat are different statutory offenses, not just two methods of committing the single offense of aggravated assault. The trial court erred by allowing the jury to return a general guilty verdict without unanimously agreeing that appellant committed either aggravated bodily injury assault or aggravated assault by threat. It was not necessary, however, for the court to require the jurors to agree that appellant used a bag, or a piece of a bag, or his hand to inflict the bodily injury, or that it was the bag or his hand that appellant used or exhibited while making the threat.

Because appellant did not object to the charge, reversible error is presented only if it appears from the record that the error was so egregious and created such harm that he did not receive a fair and impartial trial. *Jimenez v. State*, 32 S.W.3d 233, 237-38 (Tex. Crim. App. 2000); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); Tex. Code Crim. Proc. Ann. art. 36.19 (West 1981). We base our harm determination on a review of the record as a whole, including the entire jury charge, the contested issues and weight of the probative evidence,

_____

counts, while separate paragraphs within each count were used to allege the alternate methods of committing each offense. *See* Tex. Code Crim. Proc. Ann. art. 21.24(a), (b) (West 1989) (two or more offenses may be joined in single indictment, with each offense stated in separate count; count may contain as many separate paragraphs charging same offense as necessary).

9

and the arguments of counsel. *Almanza*, 686 S.W.2d at 171. The harm to appellant must be actual and not just theoretical. *Id*. at 174.

The only mention of unanimity in the jury charge was in the instruction to select a foreperson to preside over deliberations and certify the verdict "when you have unanimously agreed upon a verdict." This instruction did not serve to cure the error in the application paragraph. *Ngo*, at \*12.

During her opening statement to the jury after the indictment was read, one of the prosecutors said:

> The multiple paragraphs that [co-counsel] read to you are the different ways that the State thinks the evidence will show that he committed this one offense.
>
> And you're going to be asked at the end to determine whether he committed the offense of aggravated assault with a deadly weapon. And some of you may—you don't all have to agree on how he did it but you have to each individually think that he did it by one of the ways that we plead. Some of you may think the whole bag is a deadly weapon and that's enough for you. Some of you may think "I think the piece of bag is a deadly weapon" and that's enough. But you're all asked to find at the end—the State will ask you after considering the evidence, and we believe the evidence will show, by the time you see it you will come to the conclusion that the defendant really committed multiple, many aggravated assaults . . . but you're just asked to return a general verdict; did he do it or not by any one of these manner and means.

The other prosecutor addressed the unanimity issue in her argument to the jury after evidence was closed and the charge was read:

> What is in the charge are the elements of the offenses for aggravated assault. And as you just heard the judge read to you and as you heard when I read to you the indictment on Monday afternoon there are many ways to arrive at one verdict, for one offense. You do not have to agree. The unanimous verdict is about whether or not Mr. Marinos committed the offense of aggravated assault with a deadly weapon.

10

It is not necessary for all 12 of you to agree on which way he did that. There are many options. I think five options. You could have two people for each option and an extra two. It does not matter. It doesn't matter what the distribution is. What matters is that you, each of you is persuaded beyond a reasonable doubt that he committed the offense of aggravated assault with a deadly weapon.

Thus, the trial began and ended with the prosecutors explicitly telling the jurors that they did not have to agree as to whether appellant was guilty of aggravated bodily injury assault or aggravated assault by threat. These erroneous statements accentuated the charge error. *See id*. at *28-31.

Nevertheless, a review of the contested issues and evidence persuades us that the charge error did not deny appellant a fair and impartial trial. The jury had to find that appellant used a deadly weapon in order to convict him of aggravated assault under any of the five "options" contained in the charge. *See* p. 6, *supra*. This meant that each juror had to find that appellant smothered the complainant with a bag, a piece of a bag, or his hand because there is no other evidence to support a finding that appellant used or intended to use these items in a manner capable of causing death or serious bodily injury. Because suffocation is an impairment of physical condition, it follows that each juror found that appellant caused bodily injury to the complainant. *See* Tex. Pen. Code Ann. § 1.07(a)(8) (defining "bodily injury"). And appellant's suffocation of the complainant also constituted a threat of imminent bodily injury. *See Preston v. State*, 675 S.W.2d 598, 601 (Tex. App.—Dallas 1984, pet. ref'd) (threat can be communicated by acts alone).[4] In other words, given the evidence in this cause, to find appellant guilty of aggravated assault under either theory of the offense a juror had to find him guilty under both theories. Thus, we are satisfied that

---

[4] Neither the indictment nor the charge required a finding that appellant verbally threatened the complainant, although there is ample evidence that he did so.

the jury unanimously found appellant guilty of both aggravated bodily injury assault and aggravated assault by threat.

It is the interrelated nature of the issues and evidence in this cause that distinguishes it from *Ngo*, in which the court of criminal appeals found the charge error egregiously harmful. In *Ngo*, two of the credit card abuse offenses submitted to the jury were mutually exclusive: the defendant could not have committed both the original theft of the card *and* received the card from someone else who had committed the theft. *Ngo*, at *33. Because the two offenses were mutually exclusive in the context of that case, the verdict could not have been unanimous if even a single juror believed that the defendant was not the original thief, and the appellate court could not determine that the jury had, in fact, unanimously found the defendant guilty of one specific credit card offense. *Id*.

In the cause before us, we can determine that the jurors unanimously found appellant guilty of both the aggravated bodily injury assault offense and the aggravated assault by threat offense, notwithstanding the charge's failure to require such unanimity. We conclude, therefore, that the charge error did not deny appellant a fair and impartial trial. Points of error six through ten are overruled.

Appellant also contends that the special issue inquiring whether he used a deadly weapon in the commission of the offense was defective because it did not require the jury to unanimously determine the precise object used. We find no error for two reasons. First, the special issue was unnecessary for an affirmative finding because the indictment alleged the use of a deadly weapon, the charge required a finding that appellant used a deadly weapon in order to convict, and the jury found appellant guilty "as alleged in the indictment." *See Davis v. State*, 897 S.W.2d 791,

12

794 (Tex. Crim. App. 1995); *Polk v. State*, 693 S.W.2d 391, 396 (Tex. Crim. App. 1985); *see also* Tex. Code Crim. Proc. Ann. art. 42.12, § 3g(a)(2) (West Supp. 2005). Second, jury unanimity is not required with respect to the manner and means of committing an offense, as previously discussed. Both by convicting appellant of aggravated assault and by answering the special issue, the jury unanimously found that he used a deadly weapon. It was not necessary for the jurors to agree whether the weapon was a bag, a piece of bag, or appellant's hand. Points of error eleven, twelve, and thirteen are overruled.

### *Continuance*

Appellant elected to have the court assess punishment. After the guilty verdict was returned, the court dismissed the jury, reset the case, and ordered a presentence report. On December 16, 2002, when the case was called for sentencing, appellant failed to appear. The next day, after determining that appellant had voluntarily absented himself, the court proceeded with sentencing in his absence. *See* Tex. Code Crim. Proc. Ann. art. 33.03 (West 1989).

Appellant reappeared ten months later and the cause was reset for reimposition of sentence in appellant's presence. On October 10, 2003, when the case was called for resentencing, appellant's counsel objected to proceeding "without further evaluation of my client." Counsel told the court that it was his belief that appellant's original failure to appear was due to mental incompetence. When the court inquired if counsel believed that appellant was not presently competent, counsel replied that he needed "another opportunity to talk to him" before answering that question. The court ordered a brief recess, after which counsel stated that there was no "legal reason" not to proceed with sentencing.

13

Appellant contends the trial court erred by denying the continuance requested on October 10. No error is presented because appellant's motion for continuance, if that is what it was, was not in writing as required by statute. *Id*. art. 29.03. An oral motion for continuance presents nothing for review. *O'Neal v. State*, 623 S.W.2d 660, 661 (Tex. Crim. App. 1981). Moreover, after the recess, appellant's counsel informed the court that there was no legal reason not to proceed with sentencing at that time. Finally, the only facts cited by appellant to show an abuse of discretion were adduced at a later hearing on his motion for new trial. There is no indication that the court was aware of these facts when the continuance was requested. Point of error five is overruled.

### *Newly Discovered Evidence*

In three points of error, appellant contends the trial court erred by overruling his motion for new trial based on newly discovered evidence. *See* Tex. Code Crim. Proc. Ann. art. 40.001 (West Supp. 2005). To be entitled to a new trial on this ground, appellant was required to show that: (1) the alleged newly discovered evidence was unknown and unavailable to him at the time of trial; (2) his failure to discover or obtain the evidence was not due to a lack of diligence; (3) the new evidence is admissible and is not merely cumulative, corroborative, collateral, or impeaching; and (4) the new evidence is probably true and will probably bring about a different result on another trial. *Keeter v. State*, 74 S.W.3d 31, 36-37 (Tex. Crim. App. 2002). We review the trial court's ruling for an abuse of discretion. *Id*. at 37. A trial court abuses its discretion in denying a motion for new trial only when no reasonable view of the record could support the ruling. *Charles v. State*, 146 S.W.3d 204, 208 (Tex. Crim. App. 2004).

The claimed newly discovered evidence was the testimony of two witnesses, the first of whom was Leticia Marinos, appellant's sister-in-law.[5] She testified at the new trial hearing that she had known the complainant since 1988, when appellant and the complainant were married, and had even lived with them for a time. She said that she and the complainant had been close friends, and they had continued to visit and speak to one another even after the divorce.

Leticia testified that she spoke to the complainant on the telephone on the night of December 16, 1999, one day after the assault. The complainant was still upset and shaken by the attack. According to Leticia, the complainant described the assault to her in much the same way as appellant described it at trial. The complainant told Leticia that when she and appellant argued over child custody, appellant began to repeatedly shock her with a stun gun. Leticia testified that the complainant did not tell her that appellant had smothered her with a plastic bag or a piece of such a bag. It was Leticia's impression that the complainant had told her the whole story.

Leticia also spoke to appellant later that night or the next day, and told him what the complainant had said. Appellant's description of the incident in this conversation, as related by Leticia at the hearing, corresponded to his trial testimony. Leticia also testified that in her opinion, the complainant was not a truthful person.

Appellant's trial counsel testified at the hearing that he knew that Leticia had spoken to the complainant after the assault, and that he interviewed Leticia before trial. In this interview, Leticia did not tell counsel that she had discussed the details of the assault with the complainant, a fact Leticia confirmed in her own testimony. According to counsel, Leticia told him that she did not

---

[5] To avoid confusion, we will refer to the witness as Leticia.

want to be involved in the trial. Based on this conversation, counsel decided not to call her as a witness.

It was within the trial court's discretion to find that Leticia's testimony was not newly discovered evidence entitling appellant to a new trial. Leticia told appellant the day after the assault that she had spoken to the complainant and had at that time recounted to appellant the complainant's description of his actions. Thus, appellant knew what the complainant had allegedly told Leticia, and he certainly knew what he had told Leticia. The trial could reasonably conclude that Leticia's testimony was available before trial and could have been discovered by the exercise of due diligence. It was also within the trial court's discretion to conclude that Leticia's testimony, if admissible, merely corroborated appellant's trial testimony and impeached the complainant's trial testimony. Leticia's opinion of the complainant's truthfulness was also mere impeachment.

The other alleged newly discovered evidence was the testimony of Dr. Grace Homles, a family practice physician. Homles testified at the new trial hearing that she "observe[d] [appellant] for clinical purposes" from August 2002 until December 2002. Appellant's trial took place during this period, on November 18-20. Homles testified that in the days following his conviction and prior to the original sentencing date, appellant exhibited signs "that were consistent with major depression." She also said that she had been concerned "that he was a bit at risk for suicide." Asked by appellant's counsel if appellant's failure to appear for sentencing was voluntary "at least as we would understand that in psychological terms," she replied, "[N]o, it was not voluntary."

During cross-examination by the State, Homles testified that she spoke to appellant on November 20, the day he was convicted, and that he was not suicidal at that time. She also acknowledged that her notes from conversations with appellant on December 1 and December 14,

16

the latter date only two days before sentencing, stated that appellant was anxious and afraid of going to prison but did not appear to be suicidal. Homles's notes, which were admitted in evidence, also contain an entry dated December 16, 2002, the day appellant failed to appear for sentencing, stating that she knew of appellant's disappearance and had discussed the matter with appellant's counsel.

The evidence that Homles spoke to appellant's trial counsel on December 16, the day before the trial court ruled that appellant's absence was voluntary, reasonably supports the conclusion that Homles's opinion was available to counsel at the time of sentencing. Moreover, it was within the trial court's discretion to conclude that the doctor's opinion that appellant's absence was "psychologically" involuntary was immaterial. There was no evidence that appellant was physically unable or prevented from appearing for sentence. Appellant's failure to appear was not involuntary merely because it was motivated by fear of or anxiety regarding the prospect of a prison term. *See Bottom v. State*, 860 S.W.2d 266, 267 (Tex. App.—Fort Worth 1993, no pet.) (defendant's absence due to suicide attempt was voluntary).

The trial court did not err by overruling the motion for new trial on the ground of newly discovered evidence. Points of error two, three, and four are overruled.

### *Effectiveness of Counsel*

In his remaining points of error, appellant urges that his trial counsel rendered ineffective assistance and that the trial court erred by overruling his motion for new trial on this ground. To prevail on this claim, appellant must show that trial counsel made such serious errors that he was not functioning effectively as counsel, and that these errors prejudiced appellant's defense to such a degree that he was deprived of a fair trial. *Strickland v. Washington*, 466 U.S. 668,

17

687 (1984); *Hernandez v. State*, 988 S.W.2d 770, 771-72 (Tex. Crim. App. 1999); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). We must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). To overcome this presumption, any allegation of ineffectiveness must be firmly founded in the record and the record must affirmatively demonstrate the alleged ineffectiveness. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001).

### *Complainant's Medical Condition*

Appellant complains that his attorney did not adequately investigate the complainant's medical conditions and medications prior to trial. He also urges that counsel should have presented expert testimony or other evidence regarding the effect of the complainant's medical condition on her credibility as a witness.

The complainant testified at trial that she was diagnosed with systemic lupus, fibromyalgia, and rheumatoid arthritis in 1985 and that she was taking several medications for these conditions. The complainant, who is a pharmacist, testified that all of her medications were prescribed by doctors and that the prescribed dosages did not effect her ability to perceive and remember events. Appellant, however, points to Dr. Homles's testimony at the new trial hearing that lupus, and the medications the complainant was taking for lupus, could cause the sufferer to misperceive reality or even hallucinate. He also points to trial counsel's admission at the new trial hearing that he did not attempt to obtain the complainant's mental health records, although he knew that she had been treated by mental health professionals, and to counsel's failure to offer expert opinion such as Homles's to challenge the credibility of the complainant's testimony.

18

Appellant's counsel questioned the medical examiner at trial about the medications the complainant was taking and adduced evidence that some of them were powerful antidepressants that could adversely effect the ability to concentrate. In his own testimony at the new trial hearing, counsel explained his decision not to more vigorously challenge the complainant's mental health by saying, "I was not interested in making this individual more of a sympathetic person than what I perceived that she probably was going to be" in light of her medical conditions. He added that he did not want to "spend any more time making this lady look like a pathetic individual than what we were already concerned with." Counsel said that he had seen a video deposition of the complainant taken during a civil child custody proceeding "and I was trying to stay away from all of that."

Counsel's testimony demonstrates that his challenged decisions were strategically calculated and not merely the product of indifference or incompetence. It was well within the scope of reasonable professional assistance for counsel to decide, based on his thirty-five years as a trial attorney and with the benefit of having seen the complainant's deposition, not to pursue what he believed would be a counter-productive strategy.

### *Complainant's Truthfulness*

Appellant complains that trial counsel ineffectively failed to interview and call appellant's father and brother as character witnesses. Counsel testified that he knew before trial that these persons would testify that, in their opinion, the complainant was not a truthful person. He said that he did not offer this testimony because "I just didn't feel like it was of any value [to] . . . put the defendant's family member on to say that she was not a truthful person." Counsel was of the opinion

19

that "there could be a jury backlash from having family members kind of pound on her." This opinion was within the range of reasonable professional judgment.

### Jury Charge

Appellant urges that his trial counsel should have objected to the application paragraph of the jury charge on the grounds raised in his points of error six through twelve. As we have explained, the charge should have required the jury to unanimously decide whether appellant was guilty of aggravated bodily injury assault or aggravated assault by threat. As we have also explained, the record reflects that the jury in fact did unanimously decide that appellant was guilty of both offenses. Thus, counsel's failure to make the objection did not prejudice appellant's defense to the extent that he was deprived of a fair trial. The other objections appellant contends should have been made to the application paragraph are without merit, for the reasons explained in our discussion of the charge.

Appellant also urges that counsel should have objected to the trial court's failure to define the word "imminent" in the charge. As a general rule, words not defined in the penal code are given their common meaning and no specific jury instruction is required. *Garcia v. State*, 887 S.W.2d 846, 859 (Tex. Crim. App. 1994). "Imminent" is not defined in the penal code and the court of criminal appeals has employed the common meaning of the term. *Garrett v. State*, 619 S.W.2d 172, 174 (Tex. Crim. App. 1981).

Finally, appellant argues that counsel should have objected to the charge's definitions of "intentional" and "knowing." The court gave only the "result of conduct" definitions. Because assault by threat is a "nature of conduct" offense, appellant contends that counsel should have

requested that the definitions be amended accordingly. *See* Tex. Pen. Code Ann. § 6.03(a), (b). Although we agree that the definitions were erroneously limited, given the nature of the evidence and the contested issues, we conclude that the definitional error was harmless and that counsel's failure to object did not deprive appellant of a fair trial.

### *Presentence Report*

Appellant urges that trial counsel was ineffective at sentencing because he failed to object to fifteen errors in the presentence report. We have examined the list of alleged errors filed by appellant at the new trial hearing, and we find that they were unlikely to have had a significant impact on the punishment decision. Moreover, there is no indication in the sentencing record that the court considered the report in assessing punishment. The five-year punishment is at the low end of the range prescribed for second-degree felonies, and was closer to that urged by appellant's counsel (two years) than to that advocated by the prosecutor (ten years). A persuasive argument can be made that the court tended toward leniency given the violence of appellant's conduct, his previous felony conviction, and his failure to appear for sentencing.

### *Mitigating Evidence*

Appellant argues that his father should have been called as a character witness at the original sentencing hearing. It was stipulated that appellant's father was prepared to testify to appellant's good character generally, that appellant was an attentive and loving father, and that the divorce had caused appellant financial hardship. Appellant further asserts that Dr. Homles's testimony at the new trial hearing "is some evidence appellant had mental health problems which could have been presented" at the original sentencing hearing or at the later resentencing.

21

This issue was not raised with trial counsel at the new trial hearing.  We must presume that counsel's failure to offer the suggested mitigating evidence was an exercise of reasonable professional judgment.

### *Voluntariness*

We quote verbatim appellant's argument under the heading "Voluntariness—if counsel failed to preserve this":  "Should this Court find he did not counsel did not preserve these, appellant asserts these are also instances of deficient performance.  Obviously, counsel did not consciously fail to raise them because of 'strategy.'"  This argument presents nothing to review.

Appellant did not meet his burden of affirmatively demonstrating ineffective assistance of counsel, and the trial court did not err by overruling the motion for new trial on this ground.  Points of error fourteen, fifteen, and sixteen are overruled.

The judgment of conviction is affirmed.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices Patterson and Puryear

Affirmed

Filed:  January 13, 2006

Publish