# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00565-CR

**Thomas Leo Wilford, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 390TH JUDICIAL DISTRICT
### NO. D-1-DC-06-200059, HONORABLE FRED A. MOORE, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Thomas Leo Wilford guilty of aggravated assault with a deadly weapon and assessed punishment, enhanced by a previous felony conviction, at twenty years' imprisonment. In a single point of error, appellant contends that the trial court's jury charge denied him his right to a unanimous jury verdict. We agree that the charge was erroneous, but we find that the error was not reversibly harmful under the circumstances. Therefore, we affirm the judgment of conviction.

## BACKGROUND

Appellant spent the evening of January 3, 2006, with the complainant Tracy Lucas, a woman he had been dating for about a year. After dinner, they rented some movies and returned to Lucas's apartment. Lucas testified that she was tired and went to bed, leaving appellant to watch the movies. Between midnight and 1:30 a.m., appellant awakened Lucas three times and asked her

to drive him somewhere. On the first two occasions, Lucas refused and went back to sleep. On the third occasion, Lucas agreed to give appellant a ride, got out of bed, and began to get dressed. As she was dressing herself, Lucas noticed that appellant was reaching under the bed. She walked over to him and asked what he was doing. He told her that he was not doing anything and told her to step away. Instead, Lucas sat down on the bed next to appellant.

At this point, appellant again reached under the bed and withdrew an eight-inch knife with a serrated blade. Appellant told Lucas that he had gotten the knife from his cousin. Lucas, however, told appellant that she recognized the knife as one of hers. Then, without saying a word, appellant lunged at Lucas and, in her words, "tried to cut my throat." In fact, appellant inflicted only a minor cut at the base of Lucas's neck. Appellant then turned and "just got on top" of Lucas. Lucas asked appellant, "Leo, are you trying to kill me?" Without answering, appellant stabbed Lucas's left breast. Lucas testified that appellant then raised his hand as if to stab her again, but the blade of the knife had somehow separated from the handle. Fearing that the knife blade was still in her chest, Lucas began to scream for her son, who was sleeping in the other bedroom. With this, appellant fled from the apartment on foot.

Lucas's son, Antonio Lucas, saw appellant run from his mother's room. He called 911 and both he and his mother spoke to the operator. A recording of the call was introduced in evidence and played for the jury. The first police officer on the scene, Carlos Mayfield, testified that Lucas was "frantic" and "thought she was going to die." Lucas told the officer that appellant had stabbed her. Emergency medical technician Casey Snyder testified that he examined Lucas at her apartment and determined that the stab wound to her breast was potentially life-threatening. Lucas

2

was transported to a hospital for treatment. The jury also saw several photographs of the blood on the floor of Lucas's apartment. The knife handle was found outside the apartment, but it appears that the blade was never found.

On April 1, 2006, while appellant was awaiting trial, Lucas wrote a letter "To Whom It May Concern" giving a different version of the events of January 3. In the letter, Lucas stated that she and appellant began to argue while watching a movie. The letter continued:

> To avoid further argument Thomas got up from the bed to leave the bedroom. I then jumped up from the bed to prevent him from leaving, I was pulling on his arm trying to force him back into the room, he said Tracy just let me go, I don't want to argue with you.
>
> Once we got to the door he had to remove the small knife to get out. I have always used the small knife . . . to secure the door. I have a very large body frame and somehow, doing the struggle my breast made contact with the knife. I had been drinking a lot and was very upset prior to [the] knife accident . . . therefore I called the police. I was very incoherent and crazy with anger. At the time I did not want it to appear as an accident, but, it really was.

This letter was introduced in evidence as a defense exhibit. Lucas testified that the letter was untrue. She said that she agreed to write the letter at appellant's urging because, at the time, she still cared for appellant and did not want him to go to prison.

## DISCUSSION

The indictment accused appellant of aggravated assault in three unnumbered paragraphs. The first paragraph alleged that appellant intentionally and knowingly threatened Lucas with imminent bodily injury and that he used and exhibited a deadly weapon, the knife, while doing so. *See* Tex. Penal Code Ann. §§ 22.01(a)(2), 22.02(a)(2) (West Supp. 2007). The second

3

and third paragraphs alleged that appellant intentionally, knowingly, and recklessly caused bodily injury to Lucas by stabbing (second paragraph) and cutting (third paragraph) her with the knife, and that the assault was aggravated by the use and exhibition of a deadly weapon, the knife. *See id*. §§ 22.01(a)(1), 22.02(a)(2).

After the evidence was closed and just before the jury was charged, appellant asked that the State be required to elect one of the three paragraphs to submit to the jury. The motion for election was overruled. In its charge, the court authorized the jury to convict appellant of aggravated assault if it found that he: (1) intentionally or knowingly threatened Lucas with imminent bodily injury while using and exhibiting the knife as a deadly weapon, *or* (2) intentionally, knowingly, or recklessly caused bodily injury to Lucas by stabbing her with a knife, a deadly weapon, *or* (3) intentionally, knowingly, or recklessly caused bodily injury to Lucas by cutting her with a knife, a deadly weapon. The charge did not require the jurors to agree unanimously as to any one of the three alternatives.

Appellant contends, and the State concedes, that the jury charge was erroneous. Assault by *threatening* another with bodily injury and assault by *causing* bodily injury to another are different statutory offenses for which a defendant may be convicted only by a unanimous finding of guilt. *Marinos v. State*, 186 S.W.3d 167, 174-75 (Tex. App.—Austin 2006, pet. ref'd). Although the State sought only a single conviction for aggravated assault, it was error for the trial court to authorize that conviction without requiring the jury to unanimously agree that appellant committed

4

either aggravated assault by threat as alleged in paragraph one or aggravated bodily injury assault as alleged in paragraphs two and three. *Id*. at 175.[1]

Having found charge error, we must determine whether the error requires that appellant be given a new trial. The appropriate standard for making this determination depends on whether the error was preserved by objection in the trial court. *Jimenez v. State*, 32 S.W.3d 233, 237-38 (Tex. Crim. App. 2000); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g). If the error was the subject of a timely objection, reversal is required as long as the error was not harmless. *Almanza*, 686 S.W.2d at 171. If no proper objection was made, reversal is required only if the error was so egregious and created such harm as to have denied the defendant a fair and impartial trial. *Id*.

Appellant asked that the State be required to elect a single paragraph of the indictment to submit to the jury, but he did not object to the jury charge on the ground that it violated his right to a unanimous verdict. One purpose of an election is to ensure a unanimous jury verdict. *See Phillips v. State*, 193 S.W.3d 904, 909-10 (Tex. Crim. App. 2006). However, the defendant's right to an election by the State and the defendant's right to a unanimous jury verdict are separate and distinct rights. *See Ngo v. State*, 175 S.W.3d 738, 748 (Tex. Crim. App. 2005) (holding that failure to request election does not forfeit right to unanimous verdict). The evidence in this

---

[1] Unanimity was not required with respect to the two bodily injury assault paragraphs. Those paragraphs merely alleged two different means of committing aggravated bodily injury assault: by stabbing with a knife and by cutting with a knife. When alternate manners or means of committing the same offense are alleged, each may be submitted to the jury disjunctively, the jurors are not required to agree upon a single manner or means of commission, and it is appropriate for the jury to return a general verdict for that offense if the evidence supports a conviction under any one theory of the offense. *Marinos v. State*, 186 S.W.3d 167, 175 (Tex. App.—Austin 2006, pet. ref'd).

case supported a conviction for both bodily injury assault and assault by threat. The charge error was not in authorizing the jury to convict appellant for either of these offenses, but in failing to require that the jury's choice be unanimous. *Id*. at 749. Because the charge error in this case was not preserved by a timely and sufficiently specific objection, we must determine whether appellant was egregiously harmed. *Almanza*, 686 S.W.2d at 171. We base our harm determination on a review of the record as a whole, including the entire jury charge, the contested issues and the weight of the probative evidence, and the arguments of counsel. *Id*. The harm must be actual and not just theoretical. *Id*. at 174.

The only mention of unanimity in the jury charge was in the final paragraph, where the jury was told that its "verdict must be unanimous." This instruction did not cure the error in the application paragraph. *Ngo*, 175 S.W.3d at 745; *Marinos*, 186 S.W.3d at 175.

Appellant refers us to this statement by the prosecutor during final jury argument:

> This morning when we began, I had to read you the indictment, which is pretty long, and it's actually listed here for you on the different ways that you could find this individual guilty of committing the aggravated assault. And just briefly, it's whether or not he threatened her and exhibited the weapon, whether or not he stabbed her and exhibited the weapon, or whether or not he cut her and exhibited the weapon.

> And I believe there's testimony on all of that.

Although this statement did draw the jurors' attention to the State's alternative allegations, the prosecutor did not explicitly tell the jurors that they could convict appellant of aggravated assault without agreeing among themselves as to whether appellant was guilty of aggravated assault

6

by threat or aggravated bodily injury assault. *See Ngo*, 175 S.W.3d at 742; *Marinos*, 186 S.W.3d at 175-76.

Appellant's assertion that he was harmed primarily rests on the two different stories told by the complainant. He argues that some of the jurors, believing Lucas's trial testimony, could have found him guilty of intentionally or knowingly threatening her, while other jurors, believing Lucas's letter, could have found him guilty of recklessly stabbing or cutting her. But Lucas's letter does not support a finding that appellant consciously disregarded a substantial and unjustifiable risk that he would cause bodily injury. *See* Tex. Penal Code Ann. § 6.03(c) (West 2003) (defining "recklessly"). According to the letter, appellant had simply removed the "small knife" Lucas used as a door stop and was attempting to leave the room when Lucas stopped him and caused her breast to accidentally "ma[k]e contact with the knife." For a juror who believed the letter, appellant committed no crime—or at the very least, he did not use or intend to use the knife as a deadly weapon—and the proper verdict would have been an acquittal, not a conviction for reckless aggravated bodily injury assault.[2]

Because the jury convicted appellant, we must assume that the jurors unanimously believed Lucas's trial testimony. That testimony would support a finding that appellant intentionally or knowingly caused bodily injury to Lucas, and it would also support a finding that he intentionally or knowingly threatened Lucas with bodily injury. But, as in *Marinos*, to find appellant guilty of either offense, a juror had to find him guilty of both. *See* 186 S.W.3d at 176-77. The aggravating

---

[2] The charge did not authorize appellant's conviction for the lesser included offense of unaggravated assault.

element for both offenses was the use or exhibition of the knife as a deadly weapon. The knife was not a deadly weapon per se. *See* Tex. Penal Code Ann. § 1.07(a)(17)(A) (West Supp. 2007) (deadly weapon per se); *McCain v. State*, 22 S.W.3d 497, 502-03 (Tex. Crim. App. 2000). The only evidence that the knife was a deadly weapon in the manner of its use or intended use was Lucas's testimony that appellant lunged at her with the knife, cutting her on the throat, then stabbed her in the breast, and then raised his arm as if to stab her again. *See* Tex. Penal Code Ann. § 1.07(a)(17)(B) (deadly weapon by use or intended use). Thus, by finding that appellant used or exhibited a deadly weapon, the jurors necessarily found that he intentionally inflicted bodily injury and intentionally threatened further bodily injury. *See Schmidt v. State*, 232 S.W.3d 66, 67 (Tex. Crim. App. 2007) (holding that during prolonged assault, aggressor's actions can include both threats of harm and actual harm; infliction of harm itself can be threat of further harm); *Marinos*, 186 S.W.3d at 177 (holding that under circumstances shown, defendant's actions constituted both aggravated bodily injury assault and aggravated assault by threat).

In summary, the trial court erred by authorizing the jurors to convict appellant of either aggravated assault by threat or aggravated bodily injury assault without requiring them to unanimously convict him of one or the other offense. But the error did not deny appellant a fair and impartial trial because, under the circumstances, the jurors had to find appellant guilty of both offenses in order to convict him of either offense.

Appellant has also filed a pro se brief.[3] In the interest of justice, we will briefly address the contentions raised in this brief.

Appellant contends that the evidence is legally and factually insufficient to sustain the jury's verdict. Appellant's argument in support of this contention is in large part an attack on the complainant's credibility. The credibility of a witness is, however, a question for the jury to which appellate courts must defer. *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979) (legal sufficiency); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007) (legal sufficiency); *Johnson v. State*, 23 S.W.3d 1, 9 (Tex. Crim. App. 2000) (factual sufficiency). Appellant also argues that the State failed to prove that the knife was a deadly weapon because the knife was not introduced in evidence. It was not necessary for the State to introduce the knife into evidence in order to prove that it was a deadly weapon. *Victor v. State*, 874 S.W.2d 748, 751 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). The complainant's testimony and the evidence of her injuries were sufficient to prove that appellant wielded a knife that was a deadly weapon in the manner or its use or intended use. Finally, appellant contends that the State failed to prove that Lucas sustained serious bodily injury. Such proof was not required; the indictment alleged only that she sustained bodily injury. *Compare* Tex. Penal Code Ann. § 1.07(a)(8) (West Supp. 2007) (defining "bodily injury") *with id.* § 1.07(a)(46) (defining "serious bodily injury").

---

[3] The pro se brief was filed in response to counsel's original brief, which concluded that the appeal was frivolous. *See Anders v. California*, 386 U.S. 738 (1967). We determined that the brief did not meet the requirements of *Anders* and instructed counsel to file a new brief. Counsel's second brief raised the nonfrivolous contention discussed above.

In his remaining pro se points of error, appellant asserts that the State violated the rules of evidence and improperly attacked defense counsel during jury argument. We have reviewed these allegations and find them to be without merit.

The judgment of conviction is affirmed.

_____

W. Kenneth Law, Chief Justice

Before Chief Justice Law, Justices Waldrop and Henson

Affirmed

Filed:   April 3, 2008

Do Not Publish