# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00046-CR

**Scott Douglas Armstrong, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM COUNTY COURT AT LAW NO. 7 OF TRAVIS COUNTY
### NO. C-1-CR-06-728540, HONORABLE JAN BRELAND, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted Scott Douglas Armstrong of interfering with an emergency telephone call. *See* Tex. Penal Code. Ann. § 42.062 (West Supp. 2010). The charge arose from an altercation at a bar that also resulted in Armstrong being charged with two counts of assault. *See id*. § 22.01(a) (West Supp. 2010). The jury acquitted Armstrong of the assault charges. On appeal, Armstrong argues that the evidence adduced at trial was legally and factually insufficient to support his conviction on the interference charge. We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In the early morning hours of March 12, 2006, Armstrong approached the bar at the Peacock Lounge in Austin and ordered two drinks—one for himself and one for a female companion. The bartender, Lori Carter, refused to serve Armstrong a drink for the female companion. She testified that this was because she had not seen the companion's driver's license to verify that she

was of legal drinking age. Carter testified that Armstrong became agitated and told her that she was "going to ruin his game."

Carter testified that because Armstrong was looking at her "pretty angrily," she asked another bartender, Tami Jo Neumann, to take over for her so she could remove herself from the situation. Carter went into a back room near the bar while Neumann presented Armstrong with his tab and asked him to close it out. Neumann testified that after she did so Armstrong "sat there for several moments, kind of hovering over the tab, . . . staring towards the back room." Neumann testified that after a few moments she asked Armstrong if everything was all right, and he responded, "No. Everything isn't all right. You can tell [Carter] she is a fucking cunt." Neumann testified that she responded by saying Carter was "just doing her job and didn't feel comfortable serving" Armstrong, in response to which Armstrong said, "Fuck you too, then, you stupid dyke bitch." Neumann testified that she responded by telling Armstrong "very firm[ly]" that he needed to leave.

Carter testified that she heard this exchange and walked back into the main room of the bar. She testified that she and Neumann walked around from behind the bar, flanked Armstrong, and tried to escort him outside while telling him that he needed to leave. Carter testified that she was concerned for the well-being of the other customers in the bar because of how agitated Armstrong was. She also testified that Armstrong continued calling her obscenities and shoved her in the chest, which scared her.

Carter testified that she and Neumann were able to guide Armstrong towards the exit. As they did so, the bar's doorman, Ben Holt, who had been outside during the incident, opened the door. Holt testified that he got between the women and Armstrong, grabbed Armstrong, and told

him to leave. Holt testified that Armstrong responded by saying he would leave if Holt let go of him, but after Holt did so Armstrong did not immediately leave. Carter and Neumann both testified that at that point a male customer approached Armstrong, told him he should not be pushing women, and shoved him out the door. The customer then walked back into the bar. Neumann testified that after Armstrong was outside he tried to come back into the bar, which Neumann found surprising because "[h]e was just thrown out and is really mad and doesn't like us."

Neumann testified that by the time Armstrong was outside Holt had already called the police, but because they had not yet arrived Neumann took out her cellular telephone and began calling them again. Carter testified that Neumann said aloud, "I am calling the police again." Similarly, Neumann testified that she said very loudly, "I am going to call the cops again." Neumann and Carter both testified that Neumann dialed 911 and that as she held the phone up to her ear, Armstrong slapped her in the face, grabbed the phone from her hand, and broke the phone.[1] Armstrong then began walking towards the bar's parking lot.

Carter and Neumann followed Armstrong. They both testified that they did so to get the license-plate number of the car he got into. Carter testified that Armstrong got very angry that the women were following him. Neumann testified that Armstrong dropped his keys on the ground, and as he stood up from bending over to pick them up, he elbowed her in the stomach. Carter testified that she saw Armstrong elbow Neumann in the stomach and that he then turned to Carter,

---

[1] Carter testified that Armstrong broke the phone by throwing it against a brick wall, whereas Neumann testified that Armstrong broke the phone by smashing it on the ground. Holt testified that he saw Neumann trying to call the police and saw Armstrong grab her phone and smash it on the ground.

3

grabbed her by the neck, and pushed her. Neumann testified that she doubled over in pain after being elbowed, and as she stood up she saw Armstrong drawing his hands away from Carter's neck. Carter testified that Neumann then said, "Do you realize what you're doing? You are assaulting two women," and Armstrong responded, "You're not women. You're dyke bitches. You're not even human."

Neumann testified that Armstrong continued calling her and Carter obscenities throughout the episode. Holt testified that he saw Armstrong push Neumann but did not see him elbow her or touch Carter at any point. He also testified that "[t]here was no aggression coming from" Carter or Neumann, who "were close to tears."

Armstrong walked across the street and approached a car next to which Stephen Maida was standing. Maida was a friend of Armstrong's with whom Armstrong had come to the bar. Carter and Neumann testified that Armstrong got into the driver's side of the car and drove away, but Holt, Maida, and Armstrong testified that Armstrong got into the passenger's side of the car and Maida drove away.

Police arrived on the scene a short time later and interviewed Carter and Neumann. Carter testified that she was able to give the police Armstrong's name because she had the credit-card receipt he had signed. Carter, Neumann, and Holt all gave statements to Officer Jose Rodriguez. Rodriguez drew up an incident report that summarized their statements. The defense used the report to impeach Carter by highlighting that the report contained some discrepancies from Carter's trial testimony. For example, the report indicated that Armstrong might have choked Carter inside the bar rather than outside it. Rodriguez's report also indicated that Rodriguez did not see any signs of physical injury on Carter or Neumann.

4

Neumann testified that after the police left the scene, a bar patron who knew Armstrong approached her and said that although he did not want to get involved, he would give her Armstrong's phone number. Neumann testified that she wrote down the number and then called and gave it to the police.

Eight days later, Carter and Neumann spoke separately with police officer Deborah Acosta. As they spoke, Officer Acosta prepared typed statements for the women, which Carter and Neumann reviewed and signed. The typed versions of the women's statements contained some discrepancies from their trial testimony. For example, Carter's statement did not mention that she had seen Armstrong elbow Neumann in the stomach or that Armstrong was the driver of the vehicle in which he left the scene. Carter's statement also said that Carter initially told Armstrong she wanted to verify his companion's inebriation level, not her age. Neumann's typed statement did not mention that Armstrong had become angry with Carter before Carter asked Neumann to close out Armstrong's tab, nor did it mention that a male patron gave Neumann Armstrong's phone number.

After the State rested, the defense called Armstrong's friend Stephen Maida to the stand. Maida had driven himself and Armstrong to the Peacock Lounge on the night in question. He testified that shortly after they arrived Armstrong started "hitting on" a female patron, so Maida went and sat by himself at the end of the bar. At some point he saw Armstrong arguing with one of the female bartenders. He testified that he could not make out what they were saying, but "something really pissed . . . off" Carter and Neumann "and they proceeded to run around the bar towards" Armstrong. Maida testified that Carter and Neumann aggressively "got in [Armstrong's] face," "kind of bowed their chest" the way "people in grade school get in fights," and "kind of

5

pushed him" towards the exit. Maida testified that he did not see Armstrong touch Carter or Neumann or act aggressively towards them in any way.

Maida testified that he went outside after Armstrong was guided out of the bar. He saw Neumann "in [Armstrong's] face" with her cellular phone "clenched in [her] fist," saying, "You're going to jail, Mother Fucker." Maida testified that it did not look like Neumann was actually trying to make a call on her phone, but rather was thrusting it towards Armstrong's face. In response, Maida testified, Armstrong backed away from Neumann and held his hands up in front of himself to keep Neumann from pushing him. Maida testified that he saw Neumann's phone fall and hit the ground but did not see what caused it to fall.

Maida testified that after the phone hit the ground, he started walking towards his car across the street and called out to Armstrong to follow him. He testified that Armstrong followed him closely and that shortly after the men got in Maida's car one of the women came running with a pen and paper in hand to write down Maida's license-plate number. Maida drove away, and at no point did a law-enforcement agency ever contact him.

Armstrong then took the stand. He testified that on the night in question he went to the Peacock Lounge with Maida, struck up a conversation with a female patron, and spent most of the evening talking with her while sitting at a table. At one point he walked up to the bar while the female patron stayed at the table. He testified that he ordered a drink for himself, which Carter gave him, and then asked for a second drink. He testified that Carter asked him whom it was for, and he responded by asking her "something to [the] effect" of why it mattered. He testified that Carter responded by saying she needed to know whether it was for someone who was too drunk to be served. Armstrong testified that he was "taken aback" by the question but told Carter that it was for

6

his companion, after which Carter looked at his companion and said, "No. That girl has had enough. She is done."

Armstrong testified that he asked Carter in response, "How do you know? Looks like she has had a lot less than I have." Armstrong testified that his companion was not visibly intoxicated. He testified that his conversation with Carter started getting "a little bit tense," so he asked to close out his tab. He testified, in contrast to Carter's and Neumann's testimony, that Carter handed him his tab, not Neumann. He testified that he wrote "three big zeros in the tip column," handed the tab back to Carter, and said something like "Enjoy your tip." In response, he testified, Carter called him a "[f]ucking asshole," and he called her a "dyke bitch."

At that point, Armstrong testified, Carter and Neumann both started telling him loudly that he needed to leave the bar. He testified that he responded by saying he would leave, but rather than walking quickly towards the door he began walking towards Maida to tell him that they needed to leave. He testified that Carter and Neumann then "charged up very quickly in a very aggressive manner" and grabbed him as though to force him towards the door. He testified that he "recoiled" from them but did not push, shove, or punch them. He testified that Carter called out to Holt, who came in, grabbed him, and told him he needed to leave. Armstrong testified that he responded by saying he was on his way out and walking towards the exit. He testified that he did not recall a customer approaching him and telling him not to push women.

Once outside, Armstrong testified, he did not try to get back in the building, but he did face the door and tell Holt, Carter, and Neumann that his "ride" was inside. At that point, he testified, Neumann "super aggressively jumped in [his] face" and repeatedly bumped into him like "a gangster male." He backed away from Neumann and eventually put up his hands to "create some

7

space." He admitted that he did "put [his] hands on" Neumann but claimed that it was "completely unavoidable" because she was "laying on [him], essentially." At that point, he testified, Neumann and Carter both started saying, "We got you now, Mother Fucker. That is assault. You just touched her . . . You're going to jail." He testified that Neumann took out her cellular phone and started waving it inches from his face, and he "instinctively slapped it out of her hand." He testified that Neumann never indicated that she had taken out her phone for the purpose of calling the police. He also testified that he never dropped his keys or elbowed Neumann in the stomach. He further testified that he had given his phone number to the female bar patron with whom he had been speaking earlier in the evening, suggesting that it was she, not an unidentified male patron, who gave Armstrong's phone number to Neumann after the police left.

After Armstrong testified, he called twelve character witnesses who all testified that he had a good reputation for being peaceful, truthful, and law-abiding.

The jury acquitted Armstrong of assaulting Carter and Neumann but found him guilty of interfering with an emergency call. The trial court assessed punishment at ninety days in jail and a $1,000 fine. The court suspended the sentence and placed Armstrong on community supervision for twelve months under the condition that he pay restitution to the complainants, complete twenty-four hours of community service, and attend an anger-management program. Armstrong appeals.

## STANDARD OF REVIEW

When an appellant challenges the sufficiency of the evidence supporting his conviction, we examine all of the evidence adduced at trial in the light most favorable to the verdict

8

and ask whether the jury was rationally justified in finding guilt beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 899 (Tex. Crim. App. 2010).

## DISCUSSION

Armstrong challenges the legal and factual sufficiency of the evidence supporting his conviction. The court of criminal appeals recently did away with factual-sufficiency review, however, on the basis that it was "barely distinguishable" from legal-sufficiency review. *See id*. at 894. Thus, in this opinion, we do not recite separate review standards for legal and factual sufficiency even though Armstrong makes arguments under both standards.

Penal code section 42.062 provides in pertinent part that an individual commits an offense if he "recklessly renders unusable a telephone that would otherwise be used by another individual to place an emergency telephone call or to request assistance in an emergency from a law enforcement agency." Tex. Penal Code § 42.062(b). The statute defines "emergency" as

> a condition or circumstance in which any individual is or is reasonably believed by the individual making a telephone call to be in fear of imminent assault or in which property is or is reasonably believed by the individual making the telephone call to be in imminent danger of damage or destruction.

*Id*. § 42.062(d).

Tracking the statutory language, the information filed in this case alleged that

> Scott Armstrong, the Defendant, on or about March 12, 2006, did . . . recklessly render unusable a telephone that would otherwise be used by another individual to place an emergency telephone call and to request assistance from a law enforcement agency . . . , to wit: the Defendant took the telephone from Tami Neuman's [sic] hand and threw it to the ground thereby causing it to break, preventing Tami Neuman [sic] from being able to summon help.

9

Thus, we will affirm Armstrong's conviction if the record shows that the jury was rationally justified in finding beyond a reasonable doubt that Armstrong recklessly rendered unusable a telephone that Neumann would otherwise have used to place an "emergency" call. *See Brooks*, 323 S.W.3d at 899. The jury was rationally justified in finding that Neumann's call was an "emergency," in turn, if the evidence, viewed in the light most favorable to the verdict, supports a finding that (1) any individual was in fear of imminent assault; (2) Neumann reasonably believed that any individual was in fear of imminent assault; (3) property was in imminent danger of damage or destruction; or (4) Neumann reasonably believed that property was in imminent danger of damage or destruction. *See* Tex. Penal Code § 42.062(d); *Brooks*, 323 S.W.3d at 899.

Armstrong concedes that he rendered Neumann's phone unusable. He argues, nevertheless, that the evidence adduced at trial was insufficient to support a conviction under section 42.062 for two reasons. First, he argues that neither Carter nor Neumann testified that she feared him, and both women's actions in following Armstrong out of the bar and confronting him indicate that they did not fear him. *See* Tex. Penal Code § 42.062(d) ("emergency" exists when individual fears imminent assault). Second, Armstrong argues that because the jury acquitted him of assaulting Carter and Neumann, it could not reasonably find that (1) Carter or Neumann feared assault or (2) Neumann reasonably believed that Carter feared assault. *See id.* ("emergency" requires that "any individual is or is reasonably believed by the individual making a telephone call to be in fear of imminent assault").

Examining all the evidence in the light most favorable to the verdict, we see three reasons why Armstrong's argument fails to establish that the jury was not rationally justified in finding guilt beyond a reasonable doubt. First, there was direct evidence that Carter and Neumann

10

feared Armstrong: Carter testified that she was "scared" of Armstrong and concerned that he was a danger to other customers, and Neumann testified that she thought Armstrong was "really angry and possibly dangerous." There was also undisputed testimony that the situation at the bar was tense, that Armstrong was agitated, and that Carter and Neumann were upset.[2] This is circumstantial evidence supporting a finding that Carter and Neumann feared assault. *See Caballero v. State*, 919 S.W.2d 919, 921 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd) (complainant's fear may be established by circumstantial evidence).

Second, the fact that the jury acquitted Armstrong of assault has no logical bearing on whether the jury could reasonably believe that Carter or Neumann *feared* assault; one can fear an event that does not ultimately occur. Furthermore, because the jury returned a general verdict, we cannot assume (as Armstrong asks us to) that the jury acquitted Armstrong of the assault charges for reasons that bear on his interference charge. *See United States v. Watts*, 519 U.S. 148, 155 (1997) ("An acquittal is not a finding of any fact . . . . Without specific jury findings, no one can logically or realistically draw any factual finding inferences.") (internal quotation marks and citation omitted).

Finally, Armstrong fails to acknowledge that an "emergency" exists under section 46.062 not only when an individual fears or is reasonably believed to fear assault, but also when property damage is imminent or an individual reasonably believes that property damage is imminent. *See* Tex. Penal Code § 46.062(d). Tracking the statutory language, the jury charge instructed the jury that it could find that an "emergency" existed if it found that property damage was imminent or

---

[2] For example, Holt testified that Carter and Neumann were "close to tears."

11

Neumann reasonably believed that property damage was imminent. Given the undisputed fact that Neumann's phone was destroyed, the jury could reasonably find that property damage was imminent when Neumann attempted to call the police. And given all the testimony indicating that Armstrong was highly agitated, the jury could also reasonably find that Neumann reasonably believed property damage was imminent when she attempted to call the police. *See id*. Thus, irrespective of questions relating to assault, the record supports a finding that an "emergency" existed. *See Marinos v. State*, 186 S.W.3d 167, 175 (Tex. App.—Austin 2006, pet. ref'd) ("When alternate manners and means of committing an offense are submitted to the jury, it is appropriate for the jury to return a general verdict for that offense if the evidence supports a conviction under any one of them.").

For all these reasons, we hold that the evidence was sufficient to support Armstrong's conviction for interfering with an emergency telephone call. *See Brooks*, 323 S.W.3d at 899 (evidence is sufficient to support conviction if, viewing it in light most favorable to verdict, jury was rationally justified in finding guilt beyond a reasonable doubt). We affirm.

_____

David Puryear, Justice

Before Chief Justice Jones, Justices Puryear and Pemberton

Affirmed

Filed: April 14, 2011

Do Not Publish