

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-17-00361-CR

_____

BENJAMIN MARTINEZ, Appellant

V.

The State of Texas

---

On Appeal from the 372nd District Court
Tarrant County, Texas
Trial Court No. 1484319D

---

Before Sudderth, C.J.; Pittman and Birdwell, JJ.
Memorandum Opinion by Chief Justice Sudderth

## MEMORANDUM OPINION

In two issues, Appellant Benjamin Martinez appeals his conviction for aggravated assault with a deadly weapon. *See* Tex. Penal Code Ann. § 22.02(a)(2). We affirm.

## Background

On a Saturday morning in January 2017, Nathan[1] and Melody were startled when their son Andrew rushed inside their house from where he had been playing in the front yard and claimed that there was a man outside "trying to get him." According to Nathan, Andrew appeared "traumatized." Melody said he looked "terrified."

Understandably concerned, Nathan and Melody rushed to the front door, where they found Appellant—whom Nathan and Melody testified appeared to be intoxicated[2]—inside the screen door and attempting to open the front door to enter their house. His presence startled them—and vice versa, according to Nathan—causing Nathan to react by asking, "What the f*** are you doing," and accusing

---

[1]Because this case involves a minor child, we will refer to the complainant family using aliases in order to protect the child's privacy. *See McClendon v. State*, 643 S.W.2d 936, 936 n.1 (Tex. Crim. App. [Panel Op.] 1982).

[2]Nathan and Melody both testified that Appellant had a beer can in his hand.

2

Appellant of trying to take Andrew. According to Melody, Appellant responded, "Bullshit. I don't do that shit. He's lying."[3]

At that point, according to Nathan, Appellant became angry, put down his beer can, and in an apparent attempt to fight Nathan said, "Let's go." After initially cursing and calling Nathan names, Appellant then pulled a screwdriver out of his pocket and attempted to stab Nathan with it.[4]

According to Nathan, he responded by jumping back and then hitting Appellant twice in the face, at which time Appellant put the screwdriver back in his pocket, backed into the street, and said, "You hit too hard." But rather than retreat from the fight, Appellant instead grabbed a three-to-five-foot segment of a 2 x 4 board from a neighbor's truck and came at Nathan again. According to Nathan, Appellant tried to hit him in the head with the board, but Nathan managed to jump back and out of the way. At that point, according to Melody, Appellant announced that he was going to go train and come back later to "kick his ass."

At some point, an elderly man with a baseball cap approached the yard and grabbed onto Appellant. According to Melody, the elderly man and Appellant walked

---

[3]Nathan testified that Appellant also claimed that a truck in front of their house belonged to Appellant's grandfather, but Nathan testified that it belonged to painters working on his neighbor's home.

[4]Melody described Appellant as making an "aggressive, vicious motion" with the screwdriver that in her mind presented a threat of imminent bodily injury to Nathan.

3

away from the house. Nathan followed them, and as he did Appellant threatened to hit Nathan with a rock. But Nathan, undeterred, kept following Appellant, and all the while the two continued to argue and curse at each other. Nathan called Appellant a child molester, and Appellant claimed to be in a gang and threatened to kill Nathan with the warning, "[S]nitches get killed."

According to Nathan, Appellant came after Nathan again with the screwdriver, but Nathan "punched [Appellant] and he dropped and hit the ground." Nathan testified that he punched Appellant again, and then as Nathan started to run away, Appellant "hopped up" and chased him with the screwdriver.

Nathan called his two brothers and the police. One of his brothers arrived first. According to Nathan, when his brother arrived, he pulled out a gun and pointed the gun at Appellant, who then threw the screwdriver down. Police arrived shortly thereafter.

There was some initial confusion about whether Appellant tried to stab Nathan with a screwdriver or a knife. Melody told police on the scene that it was a knife but testified at trial that she later realized it was a screwdriver. Similarly, Nathan initially told the 9-1-1 dispatcher that Appellant had a knife, but he admitted at trial that he was "amped up" at the time and that he "knew it was a screwdriver the whole time."[5]

---

[5]Officer Ryan Spears recalled at trial that Nathan had said that Appellant had "produced what [Nathan] felt might have been a screwdriver or a knife" and had attempted to stab Nathan multiple times. Officer Spears testified, "We kind of heard

4

Nevertheless, whether a knife or a screwdriver, both Nathan and Melody testified that the weapon Appellant wielded could have caused death or serious bodily injury. The police did not recover a weapon from Appellant or from the scene.

Appellant was arrested and charged with aggravated assault with a deadly weapon. *See* Tex. Penal Code Ann. 22.02(a)(2). The jury found him guilty and assessed a 40-year sentence.

## Discussion

Appellant brings two issues on appeal. He argues in his first issue that his trial counsel rendered ineffective assistance. In Appellant's second issue, he argues that the evidence is insufficient to support the jury's verdict because, in his opinion, Nathan and Melody lied.

## I. Ineffective assistance

Appellant argues that his trial counsel was ineffective because (1) he failed to assert a hearsay objection to Andrew's statement to his parents that there was a man outside trying to get him; (2) he failed to object to statements referring to Appellant as a child molester; (3) he failed to request an extraneous-offense limiting instruction regarding the kidnapping allegation; and (4) he failed to object to the jury charge's identification of the deadly weapon as a screwdriver or a knife. Because the record on appeal does not show egregious behavior by Appellant's trial counsel and because we

a couple different accounts, but I think [Nathan] was consistent with speaking about a screwdriver."

do not have an explanation for trial counsel's strategic decisions, we overrule his first issue.

### A. Applicable law

The Sixth Amendment guarantees a criminal defendant the effective assistance of counsel. *Ex parte Scott*, 541 S.W.3d 104, 114 (Tex. Crim. App. 2017); *see* U.S. Const. amend. VI. To establish ineffective assistance, an appellant must prove by a preponderance of the evidence that his counsel's representation was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013). The record must affirmatively demonstrate that the claim has merit. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

In evaluating counsel's effectiveness under the deficient-performance prong, we review the totality of the representation and the particular circumstances of the case to determine whether counsel provided reasonable assistance under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065; *Nava*, 415 S.W.3d at 307; *Thompson*, 9 S.W.3d at 813–14. Our review of counsel's representation is highly deferential, and we indulge a strong presumption that counsel's conduct was not deficient. *Nava*, 415 S.W.3d at 307–08.

An appellate court may not infer ineffective assistance simply from an unclear record or a record that does not show why counsel failed to do something. *Menefield v.*

6

*State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012); *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007). Trial counsel "should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective." *Menefield*, 363 S.W.3d at 593. If trial counsel did not have that opportunity, we should not conclude that counsel performed deficiently unless the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *Nava*, 415 S.W.3d at 308. Direct appeal is usually inadequate for raising an ineffective-assistance-of-counsel claim because the record generally does not show counsel's reasons for any alleged deficient performance. *See Menefield*, 363 S.W.3d at 592–93; *Thompson*, 9 S.W.3d at 813–14.

## B. Application

Because Appellant did not file a motion for new trial, his trial counsel has not had an opportunity to explain his reasoning or trial strategy. *See Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011) (noting, in rejecting appellant's claim for ineffective assistance, that the record was not supplemented through a hearing on motion for new trial). So unless trial counsel's actions or inactions were "so outrageous that no competent attorney would have engaged in it," *see Nava*, 415 S.W.3d at 308, we will not conclude that he performed deficiently. Appellant has not met this burden because his complaints regarding his trial counsel's performance either could have been reasonably supported by trial strategy, or, if not, would not have given rise to reversible error.

## 1. Attempted Kidnapping allegations

Appellant takes issue with the admission of evidence that implied Appellant had approached Andrew in an attempt to kidnap him. Specifically, Appellant argues that his trial counsel should have (1) objected to Nathan's and Melody's testimony that Andrew told them that Appellant was "trying to get him" as hearsay or as violating confrontation clause protections; (2) objected to the admission of statements by Nathan, particularly on the 9-1-1 call recording during which Nathan can be heard calling Appellant a child molester; and (3) requested an extraneous-offense limiting instruction regarding the attempted kidnapping allegation.[6]

None of these asserted errors is so egregious as to allow us to determine without explanation from Appellant's trial counsel that such counsel was ineffective to the extent that reversal is required. Nathan admitted that Andrew's initial exclamation about a man "trying to get him" caused him to respond in a heated manner. He admitted that he was "amped up" at the time of the altercation, cursing

---

[6]Appellant complains that his trial counsel "fail[ed] to enforce the motion-in-limine which he had filed and argued before the trial began" and in which he had asked for the exclusion of any statements or reference to the Defendant being a child molester or committing the offenses of kidnapping or attempted kidnapping. To clarify, motions are not enforced; they are presented or filed. What can be enforced are orders. But attorneys do not do the enforcing; courts do.

Here the trial court overruled this particular part of Appellant's limine motion, so there was no order that anyone—counsel or the court—could have failed to enforce. But the record shows that when it denied Appellant's motion, the trial court indicated that it would give a limiting instruction, if requested. Appellant's counsel failed to request this instruction.

at Appellant and calling him names, including "child molester." And, as the evidence showed that Appellant was a complete stranger to Nathan, he would have no knowledge of Appellant's criminal background. Thus, the record is quite clear that Nathan's accusation against Appellant as being a child molester was just that—an accusation levied during a heated exchange, not evidence of wrongdoing, past or present. Based on the record before us, we cannot say that there was no possible trial strategy behind allowing evidence of Nathan's hostility and anger to be admitted without objection. *Villa v. State*, 417 S.W.3d 455, 463 (Tex. Crim. App. 2013) ("The court will inquire into counsel's trial techniques only when there appears to be no plausible basis in strategy or tactics for counsel's actions."); *Lopez*, 343 S.W.3d at 143–44 (overruling claim of ineffective assistance of counsel because the record was silent as to why trial counsel failed to object to improper outcry-witness testimony).[7] We therefore overrule this portion of Appellant's first issue.

---

[7]"The failure to object will not support a claim of ineffective assistance unless the trial judge would have erred in overruling the objection." *Prine v. State*, 537 S.W.3d 113, 117–18 (Tex. Crim. App. 2017); *see also* Tex. R. Evid. 803(2) (excepting "excited utterances" from the general hearsay rule); *Burch v. State*, 401 S.W.3d 634, 636 (Tex. Crim. App. 2013) (explaining that the confrontation clause only precludes testimonial out-of-court statements by unavailable declarants made for the primary purpose of a criminal investigation); *Langham v. State*, 305 S.W.3d 568, 576 (Tex. Crim. App. 2010) (explaining that statements admitted only to supply background information, such as to explain conduct, are not offered to prove the truth of the matter asserted).

## 2. Jury charge

Appellant argues that his trial counsel should have objected to the submission of a jury charge that allowed the jury to find that he committed aggravated assault with either a knife or a screwdriver. The trial court submitted the following instruction to the jury:

> Now, if you find from the evidence beyond a reasonable doubt that the Defendant, Benjamin Martinez, in Tarrant County, Texas, on or about the 21st day of January 2017, did then and there intentionally or knowingly threaten imminent bodily injury to [Nathan] and the Defendant did use or exhibit a deadly weapon during the commission of the assault, namely a knife; OR

> If you find from the evidence beyond a reasonable doubt that the Defendant, Benjamin Martinez, in Tarrant County, Texas, on or about the 21st day of January 2017, did then and there intentionally or knowingly threaten imminent bodily injury to [Nathan] and the Defendant did use or exhibit a deadly weapon during the commission of the assault, namely a screwdriver, then you will find the Defendant guilty of the offense of aggravated assault with a deadly weapon, as charged in the indictment.

Appellant's trial counsel did not object to this instruction nor should he have. Jury instructions must generally conform to the allegations in the indictment and apply the law to the facts that were adduced at trial. *Sanchez v. State*, 376 S.W.3d 767, 773 (Tex. Crim. App. 2012). The indictment against Appellant alleged that he had tried to stab Nathan with "a knife, a screwdriver, or a sharp object of the exact kind unknown . . . that in the manner of its use or intended use was capable of causing death or serious bodily injury." Evidence was introduced at trial that Appellant had tried to stab Nathan with either a knife or a screwdriver.

10

The jurors were required to unanimously agree that Appellant committed the crime of aggravated assault with a deadly weapon; they did not have to agree upon a single means of committing the offense. *Id.* ("Neither the manner (the actus reus) nor the means (the 'instrument of death') need to be agreed upon unanimously by a jury."); *Marinos v. State*, 186 S.W.3d 167, 175 (Tex. App.—Austin 2006, pet. ref'd). When a jury returns a general guilty verdict on an indictment charging alternate methods of committing the same offense, the verdict will stand if the evidence suffices to support that finding based on at least one of the valid theories. *Sanchez*, 376 S.W.3d at 775. Here, the evidence was sufficient to support either theory presented to the jury. Nathan and Melody informed police on the day of the incident that Appellant had tried to stab Nathan with a knife; at trial, they testified that they believed the weapon was a screwdriver, not a knife. When Nathan was asked at trial why he had identified the weapon as a knife, he explained, "I was just so excited. It didn't matter. He was trying to stab me. I was just trying to get the police there." He described later in his testimony that Appellant was using the screwdriver in the same manner one would use a knife to stab someone and that Appellant's actions had caused him concern and fear that he could be seriously injured or killed.

It was the jury's responsibility to resolve any conflicts between the identification of the deadly weapon as a knife or a screwdriver. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). Because either theory was supported by the evidence, any objection by trial counsel to the presentation of the alternative

theories would have been futile. As such, Appellant's trial counsel was not ineffective by failing to lodge such an objection, and we overrule the remainder of Appellant's first issue.

## II. Evidentiary sufficiency

Appellant argues in his second issue that the evidence is insufficient to support his conviction. The basis of his argument is his allegation that Nathan and Melody gave "patently false testimony" because they testified at trial that Appellant had wielded a screwdriver but told police on the day of the incident that Appellant had wielded a knife.

Federal due process requires that the State prove beyond a reasonable doubt every element of the crime charged. *Id.* at 316, 99 S. Ct. at 2787; *see* U.S. Const. amend. XIV. In our due-process evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Queeman*, 520 S.W.3d at 622.

Discrepancies existed at trial as to whether Appellant had wielded a knife or a screwdriver when he attacked Nathan. On the day of the incident, Nathan told the 9-

1-1 dispatcher that Appellant had a knife but later told a police officer that it was a knife or a screwdriver. Melody also told police on the day of the incident that Appellant had a knife. But both Nathan and Melody testified at trial that Appellant had a screwdriver. Appellant argues on appeal that we must reverse the jury's verdict because the jury "consciously disregarded" the fact that Nathan and Melody were lying.

Appellant's argument widely misses the mark. In fact, his argument attacks the heart of the jury's purpose—to weigh the evidence and the credibility of the witnesses and resolve any conflicts in the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04; *Queeman*, 520 S.W.3d at 622. The task of judging the evidence's weight and credibility belongs to the jury and the jury alone. *Id.* When performing an evidentiary-sufficiency review, we may not re-evaluate the evidence's weight and credibility and substitute our judgment for the jury's. *Queeman*, 520 S.W.3d at 622. Instead, we determine whether the necessary inferences are reasonable based on the evidence's cumulative force when viewed in the light most favorable to the verdict. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015); *see Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017) ("The court conducting a sufficiency review must not engage in a 'divide and conquer' strategy but must consider the cumulative force of all the evidence."). We must presume that the jury resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Murray*, 457 S.W.3d at 448–

13

49. After applying the proper standard of review to the evidence in the record before us, we overrule Appellant's second issue.

## Conclusion

Having overruled Appellant's two issues, we affirm the trial court's judgment.

/s/ Bonnie Sudderth
Bonnie Sudderth
Chief Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  April 11, 2019