**Affirmed and Majority and Concurring Opinions filed July 18, 2019.**



In The

# Fourteenth Court of Appeals

## NO. 14-17-00622-CR

**MARVIN DAYVON BROWN, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 228th District Court**
**Harris County, Texas**
**Trial Court Cause No. 1554409**

## MAJORITY OPINION

Appellant Marvin Dayvon Brown appeals his conviction for sexual assault. *See* Tex. Penal Code Ann. § 22.011(a)(1)(A) (Vernon 2018). He challenges his conviction based on alleged jury-charge error and the trial court's admission of improper opinion testimony. We affirm.

### BACKGROUND

Appellant was charged with sexual assault of 19-year old Complainant, K.N.

A six-day jury trial was held. At trial, Houston Police Officer Kirk Wong testified that he drove his patrol car down Fuqua Street around 1:00 a.m. on July 17, 2015, when he was flagged down by a man driving an 18-wheeler truck. As soon as Officer Wong parked his car, Complainant jumped out of the passenger side of the truck and ran towards him. Complainant was naked and only had a bra on; she was crying, scared, panicked, and distressed. She "grabbed onto" Officer Wong and yelled "rape, rape" and "help, rape."

The truck driver, M. Wenzel, also walked to Officer Wong, holding Complainant's clothes. Wenzel told Officer Wong that he first saw Complainant talking to someone in another vehicle before she jumped into the passenger side of his truck. Officer Wong gave Complainant her clothes and placed her in his patrol car. Officer Wong was talking to Wenzel when Appellant approached them. Appellant was detained at the time because he matched "for the most part" Complainant's description of the black man whom Complainant claimed had raped her. Officer Wong testified that as soon as Complainant saw Appellant "right away, boom, it's like a switch lit up. She started screaming. Her eyes opened up. Her pupils dilated. She was frantic, crying, screaming, 'That's him. Get away from me. Get away. Get away.'"

Officer Wong calmed down Complainant and talked to Appellant, who claimed that Complainant asked him for help and he tried to help her. Appellant told Officer Wong that Complainant "was taking her clothes off while she was with him, and he was just trying to help her out, but then she got scared and started yelling rape and ran away from him." When Officer Wong asked Appellant if he raped her or "touch her at all," Appellant answered he "never at any point tried to rape her or have any sexual intercourse." Appellant told Officer Wong that he was homeless and was sleeping when Complainant approached him. Appellant told Officer Wong

2

that he tried to calm Complainant down because "she was freaking out so much," but Appellant never said "anything about having sex with her, or trying to have sex with her."

Officer Wong testified that Complainant was very intoxicated and scared and that it was difficult to communicate with her. About 30 minutes after Complainant initially identified Appellant at the scene as the man who raped her, Officer Wong conducted a show-up identification. He brought Appellant to Complainant to make sure he "got a solid description" and asked Complainant if Appellant was the man who raped her. Complainant responded, "No, I don't know who that is." According to Officer Wong, Complainant described her attacker as wearing a green shirt and having dreadlocks. Officer Wong acknowledged that Appellant did not "completely" match Complainant's description because Appellant did not have dreadlocks but had a "short little afro."

Wenzel also testified at trial. He stated that he saw a vehicle stopped in the road and Complainant trying to talk to someone in that vehicle. As he came closer, the vehicle took off and Complainant came "straight at" his truck forcing him to stop, Complainant was wearing only a bra and was crying, screaming, and scared. Complainant asked Wenzel to call 911 and tried to get into his truck. Appellant, wearing a green shirt and jeans, walked up to his truck. Immediately after seeing Appellant, Complainant climbed into his truck's passenger seat. Complainant was more scared after Appellant came to the truck and yelled, "Call 911." Appellant handed Wenzel Complainant's shorts and shirt; stated Complainant is crazy; and immediately walked away. While Wenzel called 911, he saw Officer Wong's patrol car and got him to stop. Wenzel spoke to Officer Wong and handed him Complainant's clothes. As Wenzel talked to Officer Wong, Appellant walked up to the scene.

3

The jury also heard Complainant's testimony. She stated that she went to a bar to celebrate her friend's birthday earlier in the evening. After having several drinks, Complainant and her friend went to Complainant's ex-boyfriend's house. There, Complainant got into an argument with her friend because Complainant found out her friend and ex-boyfriend "were a thing." Complainant left angry and had no plan where to go next. She sat down on a curb behind a building and cried. Complainant testified that a black man approached her and asked if she "was okay." When Complainant replied she was "fine," the man told her "Sex can make everything okay. You can feel better after we have sex."

Complainant continued to fight and eventually managed to get away from the man. She saw the 18-wheeler truck and ran to ask Wenzel for help. She had no recollection of climbing into his truck even though he told her not to. Complainant remembered talking to Officer Wong and telling him what had happened to her and that she had been raped. Complainant testified she identified Appellant at the scene and told the police, "That's the guy that raped me. That's him." She testified that she does not remember seeing Appellant again after her initial identification.

Complainant testified that she was taken to the hospital by ambulance but left before being examined because she did not feel attended to. She later went to the hospital with her sister and was examined. Complainant stated that a nurse performed a SANE exam (sexual assault nurse examiner). After the exam, Houston Police Officer Melanie Smith interviewed Complainant. She took photos of Complainant. The photos showed Complainant had scrapes and injuries on her neck, arms, and legs.

Officer Smith also testified at trial. She stated that she talked to Complainant at the hospital in the morning of July 17, 2015. Complainant had a lot of injuries on her body, "was crying and hysterical." Complainant told Officer Smith about the

assault the night before and that her scratches were from fighting and being held down by the neck on the pavement. After the interview, Officer Smith went to the scene of the assault to look for evidence.

Officer Smith encountered Appellant at the scene; she noticed that Appellant wore jeans and a "green and blue T-shirt" just as Complainant had described to her. He told Officer Smith that "[h]e was homeless and sleeping in the loading dock when a girl came up crying and messed up, out of her mind. She was leaning on him and telling him to hold her and asked, 'If I was going to rape her.'" Officer Smith also testified Appellant told her that "'[Complainant] started taking her clothes off and freaking out. She ran over to a guy in an 18-wheeler and got in his truck. I walked over to talk to the guy, but she screamed, and I told him — she screamed and told him that I raped her. That's when I saw her running over to the police. I walked over to them and gave them her clothes. I did not touch that girl. I'll give y'all DNA, or whatever you want." Officer Smith then took a sample of Appellant's DNA—a buccal swab.

Clay Davis from the Houston Forensic Science Center testified that he conducted a Y-STR analysis, which only looks at the Y chromosome profile of a DNA sample. This analysis was done after a comparison was made between Appellant's DNA from the buccal swab and a sperm fraction that was developed from Complainant's anal swab collected at the hospital. Davis testified that Appellant could not be excluded as a contributor to the sperm fraction developed from Complainant's anal swabs.

Finally, the jury heard from Houston Police Officer John Barnes who was assigned to investigate the sexual assault. The first time Officer Barnes spoke with Appellant, he stated he did not have sex with Complainant, but Officer Barnes told Appellant to "wait for the DNA to come back" to "see what that says." Later,

5

Appellant continued to inquire about the case and showed an "absolute interest in the sexual assault kit," but claimed "he never had any sexual contact with" Complainant.

During one phone conversation, Officer Barnes told Appellant that he would be charged with sexual assault if he claimed he did not have sexual contact with Complainant and "the sexual assault kit came back, panties, whatever we have, says there's semen on there." Officer Barnes also asked Appellant if he "tried to have sex with her and she freaked out and ran off, and he denied that." After that phone conversation, Appellant sent Officer Barnes a lengthy email, in which he conveyed his version of events: (1) Complainant approached him; (2) she was "extremely drunk;" (3) Complainant's "knees were bruised and her shorts were near her knees;" (4) she was crying and told Appellant she wanted him to hold her and take care of her which he "thought she was giving [him] consent for sex;" (5) Complainant started shouting, when he tried to "insert [him]self inside her;" and (6) he "never made penetration" and immediately let Complainant go.

After Officer Barnes received the email, he contacted Appellant and requested to speak with him in person. Officer Barnes interviewed Appellant and a recording of the 30-minute interview was played for the jury. The jury could hear Appellant's version of events in his own words and that he repeatedly claimed that no one ever asked him if he attempted to rape Complainant. Appellant essentially repeated what he had already sent to Officer Barnes in the email.

After hearing all the evidence, the jury found Appellant guilty of sexual assault. The jury assessed punishment at ten years' confinement but recommended the trial court suspend the sentence for ten years. Following the jury's recommendation, the trial court sentenced appellant to ten years' confinement with the sentence suspended for ten years. Appellant filed a timely appeal.

ANALYSIS

## I.     Alleged Charge Error

Appellant argues in his first issue that the trial court erroneously submitted a jury "instruction on non-consent by threat" because there is no evidence of a threat in this case.  Appellant argues this error caused him harm and requires reversal and a new trial.

The jury charge stated:

A person commits the offense of sexual assault if the person intentionally or knowingly causes the penetration of the sexual organ of another person by any means, without that person's consent.

A sexual assault is without the consent of the other person if the defendant compels the other person to submit or participate by the use of physical force or violence or by threatening to use force or violence and the other person believes that the defendant has the present ability to execute the threat.

The application paragraph in the jury charge stated in relevant part:

Now, if you find from the evidence beyond a reasonable doubt that on or about the 17th day of July, 2015, in Harris County, Texas, the defendant, Marvin Dayvon Brown, did then and there unlawfully, intentionally or knowingly cause the penetration of the sexual organ of [Complainant], by placing his male sexual organ in the sexual organ of [Complainant], without the consent of [Complainant], namely the defendant compelled [Complainant] to submit or participate by the use of physical force or violence, or;

If you find from the evidence beyond a reasonable doubt that on or about the 17th day of July, 2015, in Harris County, Texas, the defendant, Marvin Dayvon Brown, did then and there unlawfully, intentionally or knowingly cause the penetration of the sexual organ of [Complainant], by placing his male sexual organ in the sexual organ of [Complainant], without the consent of [Complainant], namely the defendant compelled [Complainant] to submit or participate by threatening to use force or violence against [Complainant], and [Complainant] believed that the defendant has the present ability to execute the threat, then you will find

the defendant guilty of sex[ual] assault, as charged in the indictment. Appellant objected at trial to the inclusion of the "second manner and means paragraph" because there was no evidence of "a threat of use of violence." Appellant argued: "I believe the testimony from [Complainant] was that there was no threat. He didn't hit her or threaten to hit her. We believe that in this case they should just go forward with what [sic] the evidence that she put on, which was use of force, which would be the first paragraph." The trial court overruled Appellant's objection.

In reviewing a complaint of jury-charge error, we first determine if there was error; and, if there was error, we decide whether the error caused sufficient harm to warrant a reversal. *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005); *Ferreira v. State*, 514 S.W.3d 297, 300 (Tex. App.—Houston [14th Dist.] 2016, no pet.). The degree of harm necessary to warrant a reversal depends on whether a defendant objected to the jury charge. *Ngo*, 175 S.W.3d at 743; *Ferreira*, 514 S.W.3d at 300. If a defendant preserved error with a timely objection in the trial court, as Appellant did here, and the reviewing court finds error, the record need show only "some harm" to warrant a reversal. *See Ngo*, 175 S.W.3d at 743; *Ferreira*, 514 S.W.3d at 300. The "some harm" standard requires error that is "calculated to injure the rights of the defendant." *See Barrios v. State*, 283 S.W.3d 348, 350 (Tex. Crim. App. 2009) (quoting *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g)). There must be "some actual, rather than merely theoretical, harm from the error." *Reeves v. State*, 420 S.W.3d 812, 816 (Tex. Crim. App. 2013). In assessing harm, we consider (1) the entire jury charge; (2) the state of the evidence, including contested issues and the weight of probative evidence; (3) the argument of counsel; and (4) any other relevant information revealed by the record as a whole. *Sanchez v. State*, 376 S.W.3d 767, 774-75 (Tex. Crim. App. 2012); *Almanza*, 686 S.W.2d at 171.

Here, we need not decide whether the trial court erred in including the challenged instruction in the jury charge because, even assuming there was error, we conclude the error would be harmless.

Appellant contends that including the "instruction on non-consent by threat" was harmful because (1) the instruction was "equally prominent with the alternative theory of non-consent by use of physical force or violence;" (2) the evidence regarding whether a penetration occurred was contested; (3) the State's question whether Complainant, "by the way [Appellant] held [her] down," felt threatened by Appellant or afraid of him "suggested that the jury could apply a very broad definition for 'threatened,' equating it with feeling vulnerable or at risk, while the Penal Code requires an actual threat to use force and violence against the complainant, accompanied by the complainant's belief that the defendant has the present ability to carry it out;" and (4) during closing argument, the State told the "jury to convict even if it did not unanimously find that Appellant used physical force or violence, as long as the remaining jurors found that the complainant felt 'threatened,' i.e., afraid or vulnerable."

We begin our harm analysis by considering the jury charge. The trial court's instructions provided correct statements of the law requiring proof beyond a reasonable doubt that Appellant caused the penetration of Complainant's sexual organ without her consent. Appellant correctly states that the jury charge provided two alternative "manner and means" paragraphs regarding how Appellant could overcome Complainant's lack of consent: one, by compelling Complainant to "submit or participate by the use of physical force or violence;" second, by compelling Complainant to "submit or participate by threatening to use force or violence" against Complainant and she "believed that [Appellant] has the present ability to execute the threat."

9

But, contrary to Appellant's assertion, there is no unanimity requirement regarding the manner and means by which Appellant overcame Complainant's lack of consent. *See Dickson v. State*, Nos. 2-08-050-CR, 2-08-051-CR, 2009 WL 976019, at \*9 (Tex. App.—Fort Worth Apr. 9, 2009, pet. ref'd) (per curiam) (not designated for publication) (no unanimity requirement regarding the "manner and means" disjunctive elements in the jury charge how defendant overcame complainant's lack of consent); *see also Marinos v. State*, 186 S.W.3d 167, 174-75 (Tex. App.—Austin 2006, pet. ref'd) (although unanimity is required regarding whether the charged aggravated bodily injury assault or the aggravated assault by threat was committed, no unanimity is required regarding the specific manner and means by which the aggravated bodily injury assault or the aggravated assault by threat was committed). Nor has Appellant argued on appeal that the alternative instructions were anything but "manner and means" disjunctive elements how Appellant could overcome Complainant's lack of consent.

The requirement of jury unanimity is not violated by a jury charge that presents the jury with the option of choosing among various alternative manner and means of committing the same statutorily defined offense. *Jourdan v. State*, 428 S.W.3d 86, 94 (Tex. Crim. App. 2014); *Pizzo v State*, 235 S.W.3d 711, 715 (Tex. Crim. App. 2007). A "jury must unanimously agree about the occurrence of a single criminal offense, but they need not be unanimous about the specific manner and means of how that offense was committed." *Young v. State*, 341 S.W.3d 417, 422 (Tex. Crim. App. 2011); *see also Landrian v. State*, 268 S.W.3d 532, 535 (Tex. Crim. App. 2008) ("The jury must agree that the defendant committed one specific crime. That does not mean, however, that the jury must unanimously find that the defendant committed that crime in one specific way or even with one specific act." (internal citations omitted)); and *Miranda v. State*, 391 S.W.3d 302, 310 (Tex.

App.—Austin 2012, pet. ref'd) ("Jury unanimity is required with respect to all essential elements of the offense at issue; however, the jury need not unanimously agree on the specific method of committing a single offense.").

The different conduct listed under the "without consent" element in Texas Penal Code section 22.011(b)(1)-(11) describes alternative manner and means a defendant may overcome a complainant's lack of consent;[1] the listed conduct does not constitute different and distinct criminal offenses requiring jury unanimity. "There is a 'crucial distinction' between a fact that is a specific *actus reus* element of the crime and one that is but the means to the commission of a specific *actus reus* element." *Marinos*, 186 S.W.3d at 175 (emphasis in original). Thus, the State may allege different manner and means of committing a single offense, and the jury is not required to agree upon a single manner or means. *Id.* "The unanimity requirement is not violated when the jury has the option of choosing between alternative modes of commission." *Pizzo*, 235 S.W.3d at 715. Here, the two alternative manner and means of how Appellant overcame Complainant's lack of consent alleged in the jury charge are not specific actus reus elements; therefore, jury unanimity is not required with regard to the "without consent" element. *See Marinos*, 186 S.W.3d at 175; *Dickson*, 2009 WL 976019, at *7-9.

Additionally, "[i]n a jury charge alleging alternative theories, harm must be measured[,] 'at least in part, against the likelihood that the jury's verdict was actually based upon an alternative available theory of culpability not affected by erroneous portions of the charge.'" *Sanchez*, 376 S.W.3d at 775 (quoting *Atkinson v. State*, 923 S.W.2d 21, 27 (Tex. Crim. App. 1996), *overruled on other grounds by Motilla v. State*, 78 S.W.3d 352 (Tex. Crim. App. 2002)). When a jury returns a general

---

[1] *See* Tex. Penal Code Ann. § 22.011(b)(1)-(11) (Vernon 2018).

"guilty" verdict on an indictment charging alternate methods of committing the same offense, the verdict stands if the evidence is sufficient to support a finding under any of the theories submitted. *Kitchens v. State*, 823 S.W.2d 256, 258-59 (Tex. Crim. App. 1991); *Herrera v. State*, 367 S.W.3d 762, 775 (Tex. App.—Houston [14th Dist.] 2012, no pet.). Thus, even if one of the alternative theories was erroneously submitted to the jury, a conviction still may stand if found under another submitted theory. *Herrera*, 367 S.W.3d at 776.

In this case, there was not only sufficient evidence that Appellant intentionally or knowingly penetrated Complainant's sexual organ with his sexual organ, but there was considerable evidence that Appellant overcame Complainant's lack of consent "by the use of physical force or violence." Evidence at trial showed that Appellant forcefully held Complainant down by her neck with one hand while undressing her with the other hand. Complainant testified that Appellant held her down by the neck and that, although she fought hard, he was stronger. Officer Smith also testified that Complainant told her during an interview that Complainant sustained scratches and injuries from fighting with Appellant and being held down on the pavement by the neck. Complainant testified she started to panic and pushed the man; they shoved each other, and she ended up on the ground. Complainant was laying on her stomach fully clothed and the man tried to pull down her shorts with one hand while holding her down on the back of her neck with the other hand. Complainant fought to get away, but the man managed to take off her shorts and underwear. Complainant testified that the man penetrated her vagina with his penis. She testified that, although some things from that night were "hazy" because she was intoxicated, her memory was "clear" that the man penetrated her. According to Complainant, the man held her down by her neck but did not hit her. He also did not speak to her before, during, or after the assault except for telling her that sex would make her feel

better. Even if there was no evidence that Appellant overcame Complainant's lack of consent by threatening to use force or violence, there was more than sufficient evidence Appellant overcame her lack of consent by using physical force.

Further, the contested issue at trial was not how Appellant overcame Complainant's lack of consent. Rather, the theory propounded by the defense during trial was that no sexual assault occurred because there was no penetration and, if a sexual assault occurred, Appellant was not the perpetrator. However, Complainant's testimony constitutes sufficient evidence that Appellant penetrated her sexual organ with his sexual organ. Although Appellant in his email and recorded interview claimed he only "tried to insert [him]self inside her" and never actually penetrated Complainant, she testified that she was sure and "clear" Appellant penetrated her. Evidence showed that, after Appellant numerous times denied having any sexual intercourse or sexual contact with Complainant, he later changed his story and admitted he had sexual contact with Complainant. Evidence also showed that Complainant identified Appellant as the perpetrator at the scene, telling Officer Wong, "That's the guy that raped me. That's him." Officer Wong testified that as soon as Complainant saw Appellant at the scene, she started screaming, her eyes opened up, her pupils dilated, she started crying, and she screamed, "That's him. Get away from me."

Additionally, even though the State mentioned the jury-charge instruction regarding the two alternative manner and means of overcoming Complainant's lack of consent, it spent less than one page of its entire closing argument on the particular instruction. Both the State's and defense counsel's closing arguments focused almost entirely on whether there was penetration in this case and whether Appellant was the actual perpetrator.

Considering the entire record and that the contested issues in this case were

13

identification and penetration and not the manner in which Appellant overcame Complainant's lack of consent, and considering there was ample evidence that Appellant overcame Complainant's lack of consent by using physical force, we conclude that any error in including a jury instruction on the alternative theory of overcoming Complainant's lack of consent by threatening to use force or violence does not constitute actual harm. *Sanchez*, 376 S.W.3d at 775-76; *Herrera*, 367 S.W.3d at 775-76. Based on the record before us, it would be exceedingly unlikely for the jury to believe that Appellant penetrated Complainant but disbelieve he did so by overcoming Complainant's lack of consent using physical force. Accordingly, we conclude that any alleged charge error was harmless, and we overrule Appellant's first issue.

## II.    Opinion Testimony

Appellant contends in his second issue that (1) the trial court abused its discretion by admitting Officer Barnes's testimony opining on Appellant's credibility; and (2) he was harmed by the admission of Officer Barnes's improper opinion testimony.

A trial court's decision to admit or exclude evidence is reviewed under an abuse-of-discretion standard. *See Beham v. State*, 559 S.W.3d 474, 478 (Tex. Crim. App. 2018); *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Beham*, 559 S.W.3d at 478; *Gonzalez*, 544 S.W.3d at 370.

Evidence showing that an accused was deceptive during an investigation is relevant and admissible. *See Oliva v. State*, 942 S.W.2d 727, 732 (Tex. App.—Houston [14th Dist.] 1997, pet. dism'd). However, an expert is not permitted to give a direct opinion on the truthfulness of a witness. *See Yount v. State*, 872 S.W.2d 706, 709-10 (Tex. Crim. App. 1993). This type of testimony is inadmissible

14

"because it does more than 'assist the trier of fact to understand the evidence or to determine a fact in issue;' it *decides* an issue *for* the jury." *Id*. at 709 (emphasis in original) (quoting *Duckett v. State*, 797 S.W.2d 906, 910, 913 (Tex. Crim. App. 1990)). Similarly, a witness's expert opinion on the truthfulness of a criminal defendant during an investigation is also inadmissible. *See Gonzalez v. State*, 301 S.W.3d 393, 398 (Tex. App.—El Paso 2009, pet. ref'd) (concluding that testimony of expert was impermissible opinion on truthfulness of defendant's statement). This rule equally applies to expert and lay witness testimony. *Blackwell v. State*, 193 S.W.3d 1, 21 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).

> Appellant points to the following exchange:
>
> [THE STATE:] Sir, did you find that there were inconsistencies within [Appellant's] own statement?
>
> [OFFICER BARNES:] Yes.
>
> [THE STATE:] And after listening to his statement and after meeting with our complainant, did you find that our complainant was credible?
>
> [OFFICER BARNES:] Yes.
>
> [THE STATE:] Did you find that he was not credible?
>
> [OFFICER BARNES:] That's correct.
>
> [DEFENSE COUNSEL]: Objection, speculation, Your Honor.
>
> THE COURT: Well, it's his opinion.
>
> [DEFENSE COUNSEL]: Also, Your Honor, it invades the province of the jury.
>
> THE COURT: It's still his opinion. The jury will come to their own conclusion.

Appellant asserts that Officer Barnes provided inadmissible opinion testimony and the trial court abused its discretion by admitting the testimony. Assuming without deciding that Appellant properly objected and preserved error and that the trial court erroneously admitted Officer Barnes's testimony, we conclude, as addressed below,

15

that any error in admitting the testimony was harmless.

The erroneous admission of expert testimony is non-constitutional error. *See Coble v. State*, 330 S.W.3d 253, 280 (Tex. Crim. App. 2010). Accordingly, any error must be disregarded unless it affected a defendant's substantial rights. *Barshaw v. State*, 342 S.W.3d 91, 93 (Tex. Crim. App. 2011). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *Coble*, 330 S.W.3d at 280. If the improperly admitted evidence did not influence the jury or had but a slight effect on its deliberations, such error is harmless. *Id*.

In determining the likelihood that the jury's decision was improperly influenced, we may consider, among other things: (1) the strength of the evidence of the defendant's guilt; (2) whether the jury heard the same or substantially similar admissible evidence through another source; (3) the strength or weakness of an expert's conclusions, including whether the expert's opinion was effectively refuted; and (4) whether the State directed the jury's attention to the expert's testimony during arguments. *Sandoval v. State*, 409 S.W.3d 259, 293-94 (Tex. App.—Austin 2013, no pet) (citing *Coble*, 330 S.W.3d at 286-88). "Even in cases in which credibility is paramount, Texas courts have found harmless error when the inadmissible expert testimony was only a small portion of a large amount of evidence presented that the jury could have considered in assessing the victim's credibility." *Barshaw*, 342 S.W.3d at 96.

Applying the different factors to the evidence in this case, we conclude that the admission of Officer Barnes's opinion that Appellant was not credible was harmless.

Regarding the first factor, we observe that, although there was not overwhelming evidence supporting the jury's finding of guilt, the evidence was

16

legally sufficient. The jury heard Complainant's testimony that Appellant forcefully held her down on the ground, undressed her, and then penetrated her vagina. She identified Appellant as the perpetrator at the scene, although she was later unable to identify him again. And evidence showed that Complainant sustained injuries from fighting with Appellant. Wenzel also testified that Complainant was more scared after Appellant came to his truck, and Complainant yelled at Wenzel to "call 911."

The jury also heard testimony from Officers Wong, Smith, and Barnes that Appellant not only denied having sexual intercourse with Complainant but also denied touching Complainant or attempting to have sex with her. The jury heard that Appellant only later in the investigation changed his story and sent Officer Barnes an email stating he attempted to have sex with Complainant. The jury also heard Appellant's recorded interview with Officer Barnes in which Appellant not only conveyed his version of events but also claimed that no police officer ever asked him if he had attempted to have sex with Complainant. The jury heard that Appellant in the interview denied telling Officer Barnes during previous phone calls that he did not attempt to have sex with Complainant. Instead, Appellant claimed he did not say "No" but just did not respond when Officer Barnes previously asked him if he had attempted to have sex. The jury heard evidence that Appellant was untruthful when he asserted that no one had ever asked him if he had attempted to have sex with Complainant. Additionally, evidence was presented at trial that Appellant could not be excluded as a contributor to the sperm fraction developed from Complainant's anal swabs.

Looking to the second factor, we note that the jury heard testimony reflecting on Appellant's credibility elsewhere without objection. Several times during Appellant's recorded police interview, Officer Barnes questioned Appellant's veracity and stated his opinion on Appellant's credibility. No objection was made

17

to those statements at trial. Further, Officer Barnes testified without objection that he believed some of Appellant's statements "were truthful and other parts that were not," and that "there were inconsistencies within his own statement." Also, before Officer Barnes testified he did not find Appellant to be credible, he was allowed to testify without objection that he found "complainant was credible." This testimony was in essence an opinion that Appellant was not credible.

Error in the improper admission of evidence is harmless if the same or similar evidence is admitted without objection at another point in the trial. *Estrada v. State*, 313 S.W.3d 274, 302 n.29 (Tex. Crim. App. 2010); *Valle v. State*, 109 S.W.3d 500, 509 (Tex. Crim. App. 2003) ("An error in the admission of evidence is cured where the same evidence comes in elsewhere without objection."); *Leday v. State*, 983 S.W.2d 713, 718 (Tex. Crim. App. 1998) ("[O]verruling an objection to evidence will not result in reversal when other such evidence was received without objection, either before or after the complained-of ruling."). That the jury heard similar opinion testimony from Officer Barnes elsewhere without objection only mitigates any harm.

Regarding the third factor, we observe that Officer Barnes's testimony that he did not find Appellant credible was not particularly strong especially considering (1) he gave a two-word answer—"That's correct"—when asked if he found Appellant "was not credible;" and (2) there was other testimony from which the jury could conclude that Officer Barnes did not find Appellant credible. Also, given that Officer Barnes called the district attorney's office to accept charges against Appellant after his investigation, the jury could reasonably assume that Officer Barnes did not find Appellant credible and believed he was guilty of sexual assault. *See Sandoval*, 409 S.W.3d at 295 (finding detective's testimony explaining his doubts about defendant's credibility and his belief of child sexual abuse victim's account not particularly powerful given fact that detective forwarded case to district

attorney's office for prosecution after investigation and, thus, jury could logically assume that he found victim credible, and believed defendant was guilty of committing sexual assault).

With regard to the fourth factor, we note that the State did not mention Officer Barnes's opinion on Appellant's credibility during closing argument. The State only referred to Officer Barnes's testimony in the context of giving a brief summary of the phone calls and interview he had with Appellant.

Further, the jurors were repeatedly instructed that they were the exclusive judges of the credibility of the witnesses during voir dire and in the trial court's jury charge. After hearing Appellant's recorded interview and the other properly admitted evidence at trial, the jury reasonably could have decided on its own that Appellant was not credible. *See Flores v. State*, 513 S.W.3d 146, 171-72 (Tex. App.—Houston [14th Dist.] 2016, pet. ref'd) (holding trial court's error in admitting psychologist's testimony regarding children's truthfulness did not affect defendant's substantial rights when the testimony was not calculated to inflame jury's emotions, substantially similar testimony was allowed without objection, jury charge instructed jury that it was the sole judge of credibility of witnesses, and jury heard complainant provide detailed account regarding defendant's sexual assault).

Examining the relevant factors, we conclude that, in the context of the entire record, the trial court's admission of Officer Barnes's testimony regarding Appellant's credibility did not have a substantial and injurious effect or influence in determining the jury's verdict. *See Sandoval*, 409 S.W.3d at 293-95. Accordingly, we overrule Appellant's second issue.

## CONCLUSION

We affirm the trial court's judgment.

/s/ Meagan Hassan
Justice

Panel consists of Chief Justice Frost and Justices Zimmerer and Hassan (Frost, C.J., Concurring Opinion).

Publish — Tex. R. App. 47.2(b).